695 A.2d 734

IN THE MATTER OF THE ADOPTION OF A CHILD
BY E.T. AND T.T., WIFE AND HUSBAND.

Superior Court of New Jersey
Appellate Division

Argued May 20, 1997—Decided June 26, 1997.

Humphreys, J.A.D., filed a concurring opinion.

534

Before Judges PRESSLER, STERN and HUMPHREYS.

*Eric B. Levine* argued the cause for appellant Law Guardian (*Lindabury, McCormick & Estabrook*, attorneys; *Robert S. Burney*, of counsel; *Gregg S. Kahn*, on the brief).

*James W. Miskowski* argued the cause for respondents E.T. and T.T. (*MacFall, Riedl & Miskowski*, attorneys; *Mr. Miskowski*, of counsel; *Harriet Dinegar Milks*, on the brief).

The opinion of the court was delivered by

PRESSLER, P.J.A.D.

Appellant Robert S. Burney, an attorney of this State, was appointed by the Family Part pursuant to *R.* 5:8A to serve as the law guardian for the child in this contested adoption case. After the preliminary hearing, the trial judge entered an order terminating the parental rights of the biological parents and permitting the adoption of the child to go forward to final hearing. We affirmed that order on the biological mother's appeal by our opinion filed on March 31, 1997, under Docket Number A–4586–

95T5.[1] Just prior to the entry of the order on preliminary hearing and after the judge had made his findings, the law guardian applied for an award of counsel fees against plaintiffs. The application was denied on the ground that *N.J.S.A.* 9:3–53 precludes an award of counsel fees payable by the adoptive parents. The law guardian appeals. We reverse and remand.

This was a so-called private placement in which the biological mother, having decided to surrender the child to the adoptive parents before her birth, did so immediately following the birth. She later changed her mind and attempted to regain the child by commencement of a custody action. The adoptive parents then filed this adoption action. Thereafter, the trial court entered an omnibus order consolidating the custody action into the adoption action, appointing an approved adoption agency pursuant to *N.J.S.A.* 9:3–48(a)(2) to investigate and report, and ordering a mental and emotional fitness evaluation of the biological mother to be conducted by another agency. The order also appointed the law guardian under *R.* 5:8A, and expressly provided that the law guardian

> may apply for an award of fees and costs with an appropriate Affidavit of Services, and the Court shall award costs and fees, assessing same against either or both of the parties.

That order was prepared and presented by plaintiffs' attorney, who had requested the appointment of a law guardian.

Finally, as we understand this record, there was never any question regarding the biological mother's financial inability to pay fees. Indeed, we had found her to be indigent and entered an order assigning appellate counsel to represent her on her appeal pursuant to *In re Guardianship of Dotson*, 72 *N.J.* 112, 367 *A.*2d 1160 (1976). Consequently, we have no doubt that the realistic expectation of the plaintiffs in submitting the order to the trial judge was that if any fees and costs were to be awarded to the law guardian, they would be assessed against them. Nevertheless,

---

[1] Pursuant to *R.* 5:10–6, an order entered upon preliminary hearing is deemed final for purposes of appeal.

plaintiffs resisted such an assessment after they had prevailed, arguing that they were immunized from payment of fees pursuant to *N.J.S.A.* 9:3–53, which, while imposing the responsibility for payment of all costs of the proceedings on the plaintiffs, nevertheless stipulated that

[such] costs shall not include the provision of counsel for any person, other than the plaintiff, entitled to the appointment of counsel hereunder [*N.J.S.A.* 9:3–37 to 9:3–56].

The trial court agreed and denied the application.

## I

We are satisfied from our review of the record that the order denying the application for fees was improvidently entered irrespective of the scope and applicability of *N.J.S.A.* 9:3–53. We reach this conclusion based on the principle of judicial estoppel, namely that a party who has successfully urged a legal position during the course of litigation may not thereafter espouse a contrary legal position. *See generally Cummings v. Bahr,* 295 *N.J.Super.* 374, 385, 685 *A.2d* 60 (App.Div.1996); *Bahrle v. Exxon Corp.,* 279 *N.J.Super.* 5, 22–23, 652 *A.2d* 178 (App.Div.1995), *aff'd,* 145 *N.J.* 144, 678 *A.2d* 225 (1996). Here, plaintiffs were the proponents of the order not only appointing a law guardian but also mandating payment of his fees by the parties and, realistically, by them. Moreover, that order was consistent with *R.* 5:8A itself, which expressly authorizes the court to "award fees and costs, assessing same against either or both of the parties." Not only, therefore, did plaintiffs expect to be assessed when their order was submitted but clearly, the law guardian had a reasonable expectation of a reasonable fee for his services. We do not mean to suggest that the services would have been rendered any differently had counsel been apprised from the outset that he was being asked to render *pro bono* representation, but we do think, as a matter of fairness, that an appointed attorney is entitled to know whether the legal services he is being directed to provide are likely to be *pro bono.* We are of the view that that understanding

is essential in order that the *pro bono* burdens undertaken by the bar be fairly apportioned.

■ We are, therefore, satisfied, for these reasons, that the application for fees should not have been rejected out of hand but, rather, considered on its merits. We add, however, these observations about the services rendered. There is, of course, a distinct difference between a law guardian, as provided for by *R.* 5:8A, who must be an attorney-at-law, and a guardian ad litem, as provided for by *R.* 5:8B, who need not be an attorney-at-law. In sum, the basic role of the law guardian for an incompetent or a minor is to "zealously advocate the client's cause" whereas the basic role of the guardian ad litem is to assist the court in its determination of the incompetent's or minor's best interest. *See Matter of M.R.,* 135 *N.J.* 155, 175, 638 *A.2d* 1274 (1994). *And see generally Report of the Supreme Court Committee on Family Division Practice,* 3 *N.J. Lawyer* 2–36 (1994). *See also R.* 4:86–4(b) (counsel for incompetent) and *R.* 4:86–4(d) (guardian ad litem for incompetent). *See also N.J.S.A.* 9:6–8.21d and 9:6–8.23, requiring the appointment of a law guardian for children who are the subject of abuse or neglect proceedings under that act and designating the Office of the Public Defender to fulfill that role. *And see N.J. Div. of Youth & Family Serv. v. Wandell,* 155 *N.J.Super.* 302, 382 *A.2d* 711 (Juv. & Dom.Rel.Ct.1978), holding that children who the subject of parental termination proceedings under *N.J.S.A.* 30:4C–1, *et. seq.,* are entitled to the appointment of independent counsel.

■ With respect to adoption proceedings, there is no express authorization for a law guardian at all. The statute does, however, make reference to guardians ad litem. Thus *N.J.S.A.* 9:3–38e defines "guardian ad litem" as

> a qualified person, not necessarily an attorney, appointed by the court under the provisions of this act or at the discretion of the court to represent the interests of the child whether or not the child is a named party in the action....

The appointment of a guardian ad litem is expressly provided for in only two sections of the adoption statute, neither of which is

here applicable. *N.J.S.A.* 9:3–47b requires the court, in agency adoptions, to appoint a guardian ad litem if deemed to be in the child's best interest if the report of the approved agency is adverse to the plaintiffs. And *N.J.S.A.* 9:3–48d, applicable to private-placement adoptions, requires the court to appoint a guardian ad litem if the approved agency's report, after preliminary hearing, is adverse to the grant of the final judgment of adoption. All other appointments of guardians ad litem in adoption actions are, therefore, made pursuant to the inherent authority of the court, acknowledged by the adoption statute, to take that action in the protection of the child's best interests. *See generally Matter of Baby M,* 109 *N.J.* 396, 537 *A.*2d 1227 (1988); *In re Mercado Adoption,* 182 *N.J.Super.* 628, 442 *A.*2d 1078 (App.Div. 1982).

We have reviewed these matters because it is not altogether clear to us from this record why the trial court chose to appoint a law guardian rather than a guardian ad litem to represent the child. We also think there may have been some confusion on the part of the law guardian as to what his role entailed, and it appears to us that he may have acted in a hybrid capacity, not fully fulfilling either role. Thus, although he consulted with other counsel in the case, reviewed discovery, and appeared at depositions as the child's attorney, he never took a position as to the ultimate outcome—that is, whether or not the adoption should be granted. Indeed, he expressly refrained from making a recommendation regarding the adoption on the ground that such a recommendation would be inconsistent with his law-guardian role. Thus, contrary to the whole concept of law guardian, it does not appear to us that he ever advocated the client's cause, and it also seems clear that he could not have done so without first having defined what her "cause" was. If her "cause" was simply to have her best interests served by the court, then his role was more appropriately that of a guardian ad litem. It does not, however, appear that he fully fulfilled that role either, at least to the extent envisioned by *R.* 5:8B.

 We do not intend to be unduly critical of the law guardian. The appointment here was made not long after *M.R.*, *supra*, was decided and hence at a time when the distinction between law guardians and guardians at litem may not have been well understood. We raise the question of the somewhat ambiguous nature of his performance for two reasons. First, we think it relevant to the question of the quantum of fees to be awarded. Obviously, the award should not be based merely on the number of hours billed but also on the commensurate ability of the parties to pay and on such factors as the value of the services and the general considerations spelled out by *R.* 4:42–9(b). Second, we think it important that before an appointment is made, there should be an articulated showing, on notice and an opportunity of all parties to be heard, as to the need for either a guardian ad litem or law guardian in a contested adoption action. Moreover, the order of appointment should delineate, at least to the extent practical, the reasons for the appointment as a guide to the appointee of the nature of the services expected by the court to be performed. We think it plain that the appointment must not be routine but must be reserved for those actions in which the child or the court clearly requires the specific assistance the appointee can render whether as a law guardian or a guardian ad litem. *See R.K. v. A.J.B.*, 284 *N.J.Super.* 687, 696–697, 666 *A.2d* 215 (Ch.Div.1995).

## II

As already held, we have concluded that the principle of judicial estoppel requires that the law guardian's application for fees be entertained. Because, however, we are satisfied that the trial court's reading of the preclusion of the adoption statute, *N.J.S.A.* 9:3–53, was overbroad and incorrect here, and because the problem here may recur, we deem it necessary to address that issue as well.

 It is, of course, clear that the policy underlying the statutory preclusion is to avoid the chill that would result from placing excessive financial burdens on persons wishing to adopt a

child. Adoption of children is a favored policy for self-evident reasons. Contested adoptions can be costly enough for the adoptive parents without subjecting them to the onus of paying others' legal fees, particularly the fees of others who do not prevail. We have no doubt, therefore, that the statutory preclusion applies to bar an award of counsel fees in favor of any other party to the action, including contesting biological parents. Other techniques are available to protect the legal interests of biological parents who want to contest the termination of their parental rights implicit in an adoption judgment, including, if necessary, *pro bono* assignment of counsel.

We are satisfied, however, that, ordinarily, prevailing adoptive parents were not intended by the statute to be insulated from paying the fees of either guardians ad litem or law guardians. To begin with, the statutory preclusion, by its own terms, applies only "to the provision of counsel for any person, other than the plaintiff, entitled to the appointment of counsel hereunder." A guardian ad litem is not counsel for any other person—a guardian ad litem is not a counsel at all. Certainly *M.R.* makes that clear. Thus, the fees allowed a guardian ad litem are more properly considered to be costs of the proceedings, which are chargeable to the plaintiff, than counsel fees. We are further satisfied that particularly where the court appoints a guardian ad litem in its inherent discretion, it has the concomitant discretion to make an award of fees, chargeable to the parties as may be appropriate in the circumstances.

A law guardian, on the other hand, *is* a counsel for a person other than the plaintiff—namely, the child who is the subject of the proceeding. However, in order for the preclusion to apply, the person has to be entitled to the appointment of counsel under the adoption statute. The appointment of the law guardian was, however, not made under the statute but under the rules of court. The statute, as we have noted, expressly recognizes the discretion of the court to appoint guardians ad litem beyond the situations in which such an appointment is required by the statute

itself. We do not think the Legislature, for purposes of protecting and advancing the best interests of the affected child, would view a discretionary and circumspect appointment of a law guardian any differently. We thus conclude that *R.* 5:8A is in no way inconsistent with the statute but, rather, supplementary thereto. Consequently, we conclude that if the appointment of a law guardian in an adoption action is appropriate at all, an award of reasonable counsel fees commensurate with the ability of the plaintiff to pay will not offend either the text of *N.J.S.A.* 9:3–53, or its legislative purpose of preventing the imposition of an undue financial burden on the adoptive parents.

We reverse the order appealed from and remand to the trial court for consideration on its merits and as required by *R.* 4:42–9(b) of the law guardian's fee application.

HUMPHREYS, J.A.D., concurring.

I agree that for the reasons stated in Part I of the majority opinion, "the principle of judicial estoppel requires that the law guardian's application for fees be entertained." *See* majority opinion, at 541, 695 A.2d at 738. Because this disposes of the appeal, I would not reach the important and sensitive issue determined in Part II of the majority opinion.

As the majority persuasively states, the "policy underlying the statutory preclusion [of counsel fees] is to avoid the chill that would result from placing excessive financial burdens on persons wishing to adopt a child." As also stated by the majority, "[a]doption of children is a favored policy" and "[c]ontested adoptions can be costly enough for the adoptive parents without subjecting them to the onus of paying others' legal fees, particularly the fees of others who do not prevail." *See ibid.* In the light of these important considerations, I have reservations about the conclusion in Part II of the majority's opinion that "ordinarily, prevailing adoptive parents were not intended by the statute to be insulated from paying the fees of either guardians ad litem or law guardians."

A contested adoption case can be quite costly. In the case of *In re Adoption of a Child by H.C.*, 284 *N.J.Super.* 202, 206–07, 664 *A.*2d 515 (Ch.Div.1994), the judge ordered the adopting parents to pay the fees of an expert who testified for the natural mother and also to pay for deposition expenses. Contested adoption cases can be protracted which greatly increases the cost. In the case of *In re Baby M.*, 109 *N.J.* 396, 417, 537 *A.*2d 1227 (1988), the trial took thirty-two days. The guardian *ad litem* and her experts played an active role. *Id.* at 464–65, 537 *A.*2d 1227. Here the law guardian seeks some $18,000. Saddling adopting parents with substantial legal fees in addition to other costs raises important public policy questions. Thousands of children in this State are held in foster homes. We should be careful not to impede their chance to find happiness and stability by placing onerous financial burdens on prospective adopting parents.

Rather than attempt to divine the legislative intention on a matter of this importance, I would exercise judicial restraint. The judiciary should not venture into fields better explored by the Legislature, unless such an excursion is necessary to the disposition of the case. *See Burton v. Sills*, 53 *N.J.* 86, 95, 248 *A.*2d 521 (1968) (Courts should not act as a "superlegislature" as to matters of "legislative rather than judicial concern"); *see also White v. Township of North Bergen*, 77 *N.J.* 538, 554–55, 391 *A.*2d 911 (1978) ("the wisdom, good sense, policy and prudence (or otherwise) of a statute are matters within the province of the Legislature and not of the court").

Legislative rather than judicial consideration of important public policy issues has many advantages. Interested parties and organizations are afforded the opportunity to express their views and provide information to the Legislature. In this case, the Division of Youth and Family Services, and other State agencies could be consulted as to whether such fees would have a chilling effect on adoptions. The views of the Supreme Court Committee on Family Practice could be obtained. Having the benefit of such a wide expression of views and information should enable the

Legislature to make a better and more informed decision than a court. *See O'Keefe v. Passaic Valley Water Comm'n*, 132 *N.J.* 234, 246, 624 *A.*2d 578 (1993) (the non-judicial branches and various levels of government should be permitted to develop drug testing policies without the constraint of unnecessary constitutional adjudication); *Hennessey v. Coastal Eagle Point Oil Co.*, 129 *N.J.* 81, 107, 609 *A.*2d 11 (1992) (the complex issues of drug testing in the work place are better addressed in the context of legislative action or labor-relations agreements).

Accordingly, I would not reach out and decide the important public policy issues implicit in Part II of the majority opinion.