725 A.2d 1189 (1998)
Stephen GYIMOTY, Plaintiff,
v.
Patricia GYIMOTY, Defendant.
Superior Court of New Jersey, Chancery Division, Family Part, Essex County.
Decided July 21, 1998.
Walter Gigli, pro se, on the papers.
SCHWARTZ, J.S.C.
This case presents the novel question of whether a court appointed guardian ad litem can bring a motion under R.1:10-3 for enforcement of litigant's rights where a recalcitrant party has failed to pay the guardian ad litem the court ordered fee and if so, whether the court may award attorney's fees to the guardian ad litem and impose monetary sanctions to enforce its order fixing the fee.
This case arose out of a custody and visitation dispute in a matrimonial action. By consent agreement the plaintiff was awarded physical custody of the two children of the marriage. When the parties were unable to reach an agreement on the issues of joint legal custody and visitation, the parties were *1190 referred to mediation. The mediator was unable to assist the parties in reaching an agreement and recommended that the court appoint a guardian ad litem for the children.
On October 14, 1997, the court appointed Walter Gigli, Esq., an attorney with prior experience as a social worker, to serve as guardian ad litem. At the time of the appointment, the court learned that the parties did not have sufficient funds to pay reasonable fees to the guardian ad litem Mr. Gyimoty's 1996 tax return reflected a gross income of $29,172. Mrs. Gyimoty was unemployed and struggling to overcome a substance abuse problem. Because of the parties financial constraints, Mr. Gigli agreed to accept a fee of $1,000 for his services. The court consulted the attorneys for both parties who agreed that this fee was reasonable under the circumstances. The order appointing Mr. Gigli fixed the obligation of the plaintiff at $650 and that of defendant at $350 and directed that each pay their respective obligations in ten equal monthly installments, starting November 3, 1997.
Mr. Gigli prepared a twenty page report to the court on the issues of joint custody and visitation. To prepare his report, he reviewed court files, proposed custody and visitation plans submitted by the parties, medical records of Ms. Gyimoty, various items of correspondence, a criminal background check on the parties conducted by probation, a drug screening test report for the mother and a written chronology of events provided by the father. Mr. Gigli also interviewed the father twice in his office and once in his home, interviewed the mother once in his office and once in her home, interviewed the mother's live-in boyfriend in his office and interviewed the children twice. He also conducted telephone interviews with a physician and psychologist for the mother, the children's school guidance counselors and the probation officer from the Essex County Family Part who had performed a best interest investigation. In addition he had approximately twenty-five telephone conferences with the mother, eight telephone conferences with the father, one telephone conference with the children and several additional conferences with the attorneys for the parties.
Mr. Gigli's report, which considered the children's best interests and made recommendations to the court on joint custody and visitation, was thorough and professional and assisted the parties in reaching agreement on these issues. That agreement also resulted in a settlement of the economic issues raised in this divorce proceeding. Mr. Gigli clearly performed his duties as guardian ad litem in accordance with the obligations imposed upon him by law. See Adoption of a Child by E.T., 302 N.J.Super. 533, 539, 695 A.2d 734 (App.Div.1997). The court estimates that a fair fee for the work performed by Mr. Gigli would have been about $4,000.
The court scheduled a hearing on February 10, 1998, in an effort to settle the matter. Mr. Gigli was in attendance. By that time neither party had made any payment whatsoever towards his agreed upon $1,000 fee despite the terms ofthe order of October 14, 1997. Mr. Gigli applied for and the court entered judgment against the parties on February 10, 1998, in the sum of $650 against the plaintiff and $350 against the defendant. The order directed both parties to pay in full within ninety days and directed Mr. Gigli to issue a warrant to satisfy judgment upon receipt of payment Thereafter defendant paid Mr. Gigli in full. However, plaintiff has failed to pay Mr. Gigli his share of the court ordered fee, or any portion thereof Mr. Gigli has made several telephone calls to plaintiff's attorney and written at least one letter in an effort to secure payment of his fee from plaintiff. Those efforts have been unavailing. Plaintiff is self-employed as a painter and, accordingly, enforcement of the court's order through a wage garnishment is unavailable. The court concludes that plaintiff has more than adequate income to have paid Mr. Gigli in full and finds that his failure to do so is willful and contumacious.
Mr. Gigli has filed a motion under R.1:10-3 seeking enforcement of the court's prior orders for payment by plaintiff of his fees. The application seeks an adjudication that plaintiff is in violation of litigant's rights for his willful failure to pay the guardian's fee; for sanctions against plaintiff in the sum of $200 per day for each day that he fails to comply with the prior orders, directing that *1191 that amount accrue as an ongoing judgment against plaintiff; ordering plaintiff to pay a counsel fee to Mr. Gigli on the motion in the sum of $1,200 and ordering plaintiff to pay all costs and fees associated with the proceeding. Although the motion was not opposed by plaintiff, who apparently is no longer being represented by his attorney, this opinion is submitted to set forth the court's reasoning for its ruling on the motion
R.1:10-3 provides as follows:
Notwithstanding that an act or omission may also constitute a contempt of court, a litigant in any action may seek relief by application in the action. A judge shall not be disqualified because he or she signed the order sought to be enforced. If an order entered on such as application provides for commitment, it shall specify the terms of release.... The court in its discretion may make an allowance for counsel fees to be paid by any party to the action to a party accorded relief under this rule. An application by a litigant may be tried with a proceeding under R. 1:10-2(a) only with the consent of all parties and subject to provisions of R.1:10-2(c).
Clearly the above rule does not apply specifically to a claim made by a guardian ad litem for enforcement of an order awarding fees. The term "litigant" is defined by Black's Law Dictionary (1990) as: "A party to a law suit (i.e., plaintiff or defendant); one engaged in litigation; usually spoken of active parties, not of nominal ones."
However, any court rule, unless otherwise stated, "may be relaxed or dispensed with by the court in which the action is pending if adherence to it would result in an injustice" and, the court rules "shall be construed to secure a just determination, simplicity in procedure, fairness in administration and the elimination of unjustifiable expense and delay." R. 1:1-2. The court rules governing the Family Part of the Chancery Division grant the court broad discretion to appoint a guardian ad litem to protect and represent the best interests of the child in all cases in which custody and visitation is an issue. R. 5:8B. The rule contains a provision for the award by the court of fees and costs for the guardian ad litem. R. R.5:8B(d). Use of R.1:10-3 by such persons to seek enforcement of court orders for payment of their fees by recalcitrant parties is an appropriate use of that rule.
The court rule contemplates that the guardian ad litem's fee be reasonable and be based upon an hourly rate approved by the court and fixed in the initial appointing order. R. 5:8B(d). That rule also requires the submission of informational monthly statements to the parties by the guardian ad litem and a certification of services at the conclusion of the matter on nonce to the parties, with each party being afforded the opportunity and right to respond prior to entry of an order fixing the final fee. Ibid. In this case the formal requirements of R. 5:8B(d) were waived on behalf of the parties by their respective attorneys since it was known at the time of his appointment by the court that the time investment by Mr. Gigli would result in a substantially higher fee than that agreed to by Mr. Gigli if the court were to establish a reasonable hourly rate and determine his fee at the conclusion of the proceedings.
To limit application of R.1:10-3 to litigants to the cause and preclude its application to court appointed guardians ad litem would result in an injustice and produce unjustifiable expense and delay to such guardians ad litem in seeking payment of fees approved by the court. Strict enforcement of the rule would require court appointed guardians ad litem to file a separate complaint against recalcitrant parties in order to obtain judgments based upon Family Part fee award orders. To require such procedural formality would unduly delay the collection of the fees by court appointed guardians ad litem and cause them unnecessary expense. This situation clearly cries out for relaxation of R.1:10-3 to permit such court appointed guardians to seek relief under that rule. The relaxation of the rule serves the added purpose of encouraging persons requested by our courts to serve as guardians ad litem to accept such appointments, especially where the parties are not financially well off, if such guardians know that a simplified inexpensive *1192 procedure for enforcement of any fee award will be available to them, if necessary.[1]
Mr. Gigli seeks an award of counsel fees on this motion. Mr. Gigli's right to obtain counsel fees is not free from doubt. Two trial courts have reached opposite conclusions on the right of an attorney representing himself pro se to receive attorney's fees Both cases involved an interpretation of the frivolous litigation statute and its provision for awarding attorney's fees to the successful party. N.J.S.A. 2A:15-59.1(c), In Asaadi v. Meltzer, 280 N.J.Super. 68, 654 A.2d 506 (Law Div.1994), the court held that an attorney representing himself pro se was not entitled to attorney's fees. In Deutch & Shur, P.C. v. Roth, 284 N.J.Super. 133, 663 A.2d 1373 (Law Div.1995), the court rejected the Asaadi analysis and held that the prevailing pro se attorney was entitled to recover reasonable attorney's fees.
N.J.S.A. 2A:15-59.1(c) provides as follows:
A party or public entity seeking an award under this section shall make application to the court which heard the matter. The application shall be supported by an affidavit stating in detail:
(1) The nature of the services rendered, the responsibility assumed, the results obtained, the amount of time spent by the attorney, any particular novelty or difficulty, the time spent and services rendered by secretaries and staff, other factors pertinent in the evaluation of the services rendered, the amount of the allowance applied for, an itemization of the disbursements for which reimbursement is sought, and any other factors relevant in evaluating fees and costs; and
(2) How much has been paid to the attorney and what provision, If any, has been made for the payment of these fees in the future.
The Asaadi court interpreted the language in subsection two as requiring that monies actually be paid out to an attorney in order for the pro se litigant to recover attorney's fees. Therefore, the court concluded that a pro se attorney who did not in fact incur attorney's fees could not recover for the value of the time spent by that attorney in defending a frivolous claim.
Deutch & Shur, in refusing to follow Asaadi, concluded that the purposes of the frivolous litigation statute militated in favor of an award of attorney's fees to a pro se attorney. The court there reasoned that the legislature had merely failed to consider the possibility of a pro se attorney representing himself in the litigation at the time that it drafted the legislation. The Deutch & Shur court pointed to the punitive purpose of the statute to deter frivolous litigation and the absence of any reason why the Legislature would distinguish between pro se attorney litigants and those represented by attorney. The court also noted that the statute sought to compensate the party who has been victimized by the bringing of the frivolous litigation and made the following observations with respect to the policy favoring an award of attorney's fees in such circumstances:
An attorney representing himself expends time. The old adage that "Time is money" has no greater validity than in an attorney's world. The time spent by an attorney defending a frivolous claim could have been spent working on a matter for a paying client.
[284 N.J.Super. at 141-142, 663 A..2d 1373.]
This court need not decide which of the two approaches is correct under the frivolous litigation statute. Provisions comparable to those appearing in N.J.S.A. 2A:15-59.1(c)(2) are not incorporated into R. 1:10-3. That rule vests the trial court with discretion to award, and its policy favors the award of, attorney's fees to the prevailing movant who seeks relief in aid of litigant's movant where the opposing party fails or refuses to comply with a court order. Nothing in the court rule *1193 indicates that any award of attorney's fees is dependant upon the payment of such fees by the prevailing party. When a pro se litigant is an attorney earning a substantial part of his income from the private practice of law, that attorney should be entitled to the recovery of attorney's fees under R.1:10-3 for the reasonable value of the time expended by him to bring an enforcement motion.[2] The rationale discussed in Deutch & Shur supporting the award of counsel fees to a pro se movant attorney is clearly applicable to the circumstances here and justifies the award of attorney's fees to Mr. Gigli for the reasonable value of the time he expended in the filing of the motion .[3]
Mr. Gigli provided the court with a certification indicating that it took him six hours, including an appearance before the court on February 10, 1998, telephone calls and correspondence with plaintiff's attorney seeking to collect his fee, legal research and the preparation of the motion. supporting affidavit and letter memorandum of this motion. He seeks recovery of attorney's fees on the motion in the sum of $1200 at the rate of $200 per hour. Mr. Gigli, did not incur any out of pocket attorney's fees for the services rendered. However, because he is an attorney engaged in the private practice of law and had to file this motion in order to seek recovery of the fees previously awarded by the court, he is entitled to a reasonable fee for the time expended solely in connection with this motion.
Mr. Gigli's certification of services does not breakdown the time spent on each of the items of services described above. However, Mr. Gigli's appearance before the court of February 10, 1998, was in connection with a settlement conference in this matter and was not directly related to the motion. That appearance involved approximately three and one-half hours of the six hours to which he refers in his certification. Another one half hour was probably spent in phone calls and letters to plaintiff's attorney before the filing of this motion.
The court finds a reasonable fee in this case to be $200. This amount is based on the court's conclusion that the legal research and preparation, filing and service of the motion papers and supporting letter memorandum probably took about two hours, that the amount in dispute is small ($650), that Mr. Gigli did not have to make a court appearance because no written opposition to the motion was submitted by plaintiff and that Mr. Gigli, as a pro se litigant, should not recover a profit for the time he expended for his own benefit. Under these circumstances the court finds that a reasonable hourly rate is $100 per hour.
The remaining issue to be resolved is the appropriateness of imposing a monetary sanction against plaintiff for noncompliance with the prior court orders. The principle of imposing monetary sanctions to encourage compliance with court orders has been well recognized in our jurisdiction in the context of noncompliance by public employees with injunctions baring strikes. See, e.g., East Brunswick Bd. of Educ. v. East Brunswick Educ. Ass'n, 235 N.J.Super. 417, 563 A.2d 55 (App.Div.1989); Franklin Township Bd. of Educ. v. Quakertown Educ. Ass'n, 274 N.J.Super. 47, 643 A..2d 34 (App.Div.1994). However, this principle has not been applied in any reported decision to the willful refusal of a litigant to pay a court appointed guardian, attorney or expert witness the amount of any fees previously fixed by the court. The principles justifying the award of monetary sanctions to encourage compliance with a court injunction do, however, apply to this case as well.
*1194 In East Brunswick Bd. of Educ. v. East Brunswick Educ Ass'n, supra, the court described the purpose of a proceeding under R. 1:10-3 (formerly R. 1:10-5) as follows:
The object of civil proceeding to afford supplemental relief to a litigant, R. 1:10-5, is to enforce a court's order Unlike a contempt proceeding, R. 1:10-1 through 4, punishment is not the objective, though a sanction imposed by the court to compel compliance may inflict punishment's sting.
[235 N.J.Super. at 420-421, 563 A.2d 55.]
The court in East Brunswick Bd. of Educ. recognized that "limiting monetary compliance sanctions to the aggrieved party's actual damages is unworkable because in many cases there are no financial losses." Id. at 422, 563 A.2d 55. Where monetary sanctions are appropriate to coerce compliance with the court's order, the standard for fixing that monetary sanction is set forth in East Brunswick of Educ. as follows:
the monetary sanction, nevertheless, must be fashioned in an amount sufficient to sting and force compliance, but must not be so excessive as to constitute ruinous punishment. Cf. Catena v. Seidl, 68 N.J. 224, 229, 343 A.2d 744 (1975) (coercive order cannot be used to punish). The court in structuring the sanction must consider the offending party's ability to pay and the sanction's impact on that party in light of its income, status and objectives, as well as the sanction's impact on innocent third parties.
[235 N.J.Super. at 422-423, 563 A.2d 55.]
Imposition of a reasonable monetary sanction to coerce plaintiff to comply with the prior orders of this court for payment of his share of the fee of the guardian ad litem seems particularly appropriate in this case because of the nominal fee charged, the undue expense which the guardian would have to incur to enforce the order, the plaintiff's financial ability to pay his share of that fee. and the contumacious refusal of the plaintiff to pay the fee or make any of the court ordered installment payments of $65 per month. In view of plaintiff's limited financial circumstances, and taking into account his failure to make any payment to date, the court will enter an order requiring plaintiff to pay in full the amount due under the prior court orders, plus the attorney's fee awarded to Mr. Gigli on this motion, within thirty days of the date the order is entered. Failure of plaintiff to make such payment within that time period is to result in the imposition of a sanction of $20 per day for each day of delay beyond that thirty day period, which amount is to be added to the judgment entered in favor of Mr. Gigli until the judgment is paid in full.
NOTES
[1] Family part judges also have broad discretion to appoint economic, medical, psychological and other mental health experts to aid the court and to order the payment of their fees by one or both of the parties,R.5:3-3(a) and (b), and to appoint an attorney as counsel for a child in a custody or visitation case and provide for payment by the parties of the attorney's fees. R.5:8A. The use of R. 1:10-3 by such persons to seek enforcement of fee awards against non-paying parties would also be appropriate based on the reasons set forth above.
[2] When the pro se litigant is an attorney not engaged in the private practice of law, he or she would be no different from any other pro se litigant who is not entitled to the award of counsel fees. See Dunn v. State of New Jersey, Dept. of Human Services, 312 N.J.Super. 321, 333, 711 A.2d 944 (App.Div. 1998).
[3] The rational for denying attorney's fees to pro se litigants who are also attorneys in Civil Rights Act cases in order to enforce the statutory policy to create an incentive to retain counsel in every such case, Kay v. Ehrler, 499 U.S. 432, 438 111 S.Ct. 1435, 1438, 113 L.Ed.2d 486, 493 (1991), does not apply to relatively simple fee award enforcement motions under R. 1:10-3 because there is no valid reason nor policy evident in the court rule to encourage a guardian ad litem or court appointed attorney to engage the services of another attorney to prosecute such a motion.