**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2771-22

R.G.,[1]

      Plaintiff-Respondent,

v.

M.Y.,

      Defendant-Appellant.

_____

Argued September 12, 2024 – Decided October 10, 2024

Before Judges Berdote Byrne and Jacobs.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Middlesex County, Docket No. FD-12-1157-17.

Stephanie Palo argued the cause for appellant (Buchan, Palo & Cardamone, LLC, attorneys; Stephanie Palo, on the briefs).

Christian R. Oehm argued the cause for respondent (Lindgren, Lindgren, Oehm & You, LLP, attorneys; Christian R. Oehm, on the brief).

---

[1] We use initials for the parties and a fictitious name for the minor child to protect their privacy interests. R. 1:38-3(d).

PER CURIAM

Defendant-father appeals a February 8, 2023 order denying his motion to modify parenting time and appoint a guardian ad litem ("GAL"), and an April 24, 2023 order denying his motion for reconsideration. The Family Part found defendant failed to establish a prima facie basis to modify parenting time and denied defendant a plenary hearing on the issue. It also declined to appoint a GAL. We disagree and conclude defendant presented sufficient evidence to establish a prima facie case entitling him to a review of the current parenting time plan. We remand the matter to the Family Part for further review, consistent with this opinion.

I.

Plaintiff and defendant had a limited dating relationship prior to plaintiff giving birth to their only shared child, "Molly," who was born in November of 2016. The parties stopped communicating after plaintiff informed defendant she was pregnant. On May 15, 2017, the Pennsylvania Court of Common Pleas entered an order for child support. At the time, defendant lived in Pennsylvania and Molly resided with her mother in New Jersey. On January 10, 2018, the parties entered into a consent order regarding custody and parenting time.

A-2771-22

In the order, defendant agreed to a gradual expansion of his parenting time, eventually allowing him to have alternating weekend parenting time from Friday at 6:30 p.m. to Monday at 8:00 a.m., a week-day dinner every Wednesday from 6:30 to 8:30 pm, and a week-day dinner every-other Tuesday from 6:30 to 8:30 pm. The order also stated: "[i]n the event either party needs to travel for work or personal travel, the parties will be flexible in rescheduling parenting time." When the consent order was executed, Molly was fourteen months old, and defendant worked full time at his job in Pennsylvania while residing in Wyncote, Pennsylvania, approximately one hour from where Molly resided with plaintiff.

On September 11, 2018, the parties entered into another consent order pertaining primarily to vacation time, holidays, and Molly's religious upbringing. Six months after the parties entered into that consent order, defendant moved to East Brunswick, New Jersey. He took no further legal action for three years.

On September 3, 2021, defendant filed an order to show cause ("OTSC") certifying Molly "was harmed as a result of [p]laintiff's father sexually abusing" her. The court denied the OTSC without prejudice because "the Division of Child Protection and Permanency [("DCP&P")] and the Middlesex County

Prosecutor's Office [were] involved," and their investigation was "still pending." The judge stated the OTSC was denied "until the conclusion of [the] investigation or further order of the [c]ourt." DCP&P thereafter determined there was "[n]o immediate or imminent threat or danger to the minor child," and reported there would be "[no] formal proceeding in the [c]ourt or otherwise because . . . [DCP&P] ha[d] no reason or basis to commence such a proceeding."

On September 27, 2022, defendant moved for modification of his parenting time, appointment of a GAL for Molly, disclosure of the DCP&P file, and other related relief. Defendant certified he was "seeking a change of custody to [fifty-fifty] shared custody, or in the alternative, . . . an increase in overnight parenting time" with Molly. Defendant also certified he was living in Wyncote, Pennsylvania at the time the 2018 consent order was entered into, but subsequently moved to East Brunswick, New Jersey "specifically to be closer to [his] daughter," and now lives "less than ten minutes away." Further, defendant stated he now works from home and is no longer required on a daily basis to drive to his office in Pennsylvania. Finally, he certified he was now married and wanted Molly "to spend more time with [his] wife and [Molly's] stepsister." Defendant stated plaintiff "refused to allow [him] additional time with [Molly] even though [he] live[d] so close to her now" and "insist[ed] on strict compliance

4

with the [c]onsent [o]rder."   Plaintiff filed opposition and a cross-motion requesting the trial court award her attorneys' fees and costs.   After oral argument on the motions, the trial court denied the motion to modify parenting time.   Although it noted the parties "should be trying to come to some middle ground" regarding parenting time, it nonetheless denied defendant's request for modification because "defendant failed to provide proof as to a change of circumstances to merit a change."

Defendant moved to reconsider, which plaintiff also opposed.  He asserted the trial court's decision contained "palpably incorrect reasoning" because the "circumstances combined in their totality" were sufficient to establish a prima facie showing of change of circumstances.   Defendant argued "[w]hen the custody and parenting time plan was coordinated by the parties[,] . . . th[e parties'] child was only between one and two years old" and the fact that Molly was now six years old supported a finding of changed circumstances.  Defendant reiterated he now lived much closer to Molly, but the trial court "d[id not] see how that [was] a changed circumstance."

The judge stated:

> I'm trying to figure out . . . what the real rub is here. [Defendant is] saying [he is] available, [and he] want[s] to spend more time with the child.  Obviously[,] he's got to get over the threshold of changed circumstances.

5

> But aside from all of that, why not some willingness to meet him halfway[?]

The trial court stated it was "somewhat persuaded, but it doesn't carry the day, . . . that [defendant] is available for more [parenting] time" because defendant's increased availability for Molly was "not a changed circumstance." It then stated: "I don't necessarily see that it's in the best interest of the child [to spend more time with defendant] at this point because the undercurrent . . . appears as though the parties really don't get along." It then denied the motion for reconsideration. This appeal followed.

## II.

Our review of "a trial court's findings in a custody dispute is limited." W.M. v. D.G., 467 N.J. Super. 216, 229 (App. Div. 2021). We extend significant deference to the Family Part's discretionary decisions, provided those decisions are supported by adequate, substantial, and credible evidence in the record. D.A. v. R.C., 438 N.J. Super. 431, 451 (App. Div. 2014). "A proper exercise of judicial discretionary authority 'connotes conscientious judgment, not arbitrary action; it takes into account the law and the particular circumstances of the case before the court.'" Ibid. (quoting Higgins v. Polk, 14 N.J. 490, 493 (1954)). Unlike factual findings, issues of law are subject to de novo review. W.M., 467 N.J. Super. at 229.

6

When two parents cannot agree on issues affecting their child, the court must act in the best interest of the child in making determinations regarding custody and parenting time. See N.J.S.A. 9:2-4. The Family Part, acting as parens patriae, is empowered to act in the best interest of the child. Parish v. Parish, 412 N.J. Super. 39, 52-53 (App. Div. 2010). Indeed, the child's best interest is "[t]he touchstone for all custody [and parenting time] determinations . . . ." J.G. v. J.H., 457 N.J. Super. 365, 374-75 (App. Div. 2019) (quoting Faucett v. Vasquez, 411 N.J. Super. 108, 118 (App. Div. 2009)). This best interest standard "protects the 'safety, happiness, physical, mental[,] and moral welfare of the child.'" Beck v. Beck, 86 N.J. 480, 497 (1981) (quoting Fantony v. Fantony, 21 N.J. 525, 536 (1956)). In contested cases, the court "must reference the pertinent statutory criteria with some specificity," Kinsella v. Kinsella, 150 N.J. 276, 317 (1997) (quoting Terry v. Terry, 270 N.J. Super. 105, 119 (App. Div. 1994)), and "specifically place on the record the factors which justify" the arrangement, N.J.S.A. 9:2-4(f).

N.J.S.A. 9:2-4 requires family courts consider a non-exhaustive list of factors when making an initial award of custody and parenting time, including:

> the parents' ability to agree, communicate and cooperate in matters relating to the child; the parents' willingness to accept custody and any history of unwillingness to allow parenting time not based on

substantiated abuse; the interactions and relationship of the child with its parents and siblings; the history of domestic violence, if any; the safety of the child and the safety of either parent from physical abuse by the other parent; the preference of the child when of sufficient age and capacity to reason so as to form an intelligent decision; the needs of the child; the stability of the home environment offered; the quality and continuity of the child's education; the fitness of the parents; the geographical proximity of the parents' homes; the extent and quality of the time spent with the child prior to or subsequent to the separation; the parents' employment responsibilities; and the age and number of the children.

Defendant asserts six events require a finding of substantial change in circumstances and a modification of parenting time: (1) Molly's age, because Molly is now six years old and attending school and the consent order was entered into when she was fourteen months old; (2) "[d]efendant no longer lives in Pennsylvania and now lives in the same town as plaintiff[,] just [five] minutes from [Molly's] school;" (3) defendant no longer commutes to work and works from home full-time; (4) "[d]efendant [is] married and has a like-aged step daughter"; (5) "plaintiff has begun to withhold additional parenting time from defendant"; and (6) "[Molly] has raised serious issues regarding her well[-]being and care while being cared for [by] plaintiff and [Molly]'s maternal grandfather."

Defendant's change in geographic proximity to Molly, coupled with her maturation and entry into school, established the requisite prima facie case and

8

entitled defendant to a review of the parenting time plan to determine what is in Molly's best interest.

A. The Prima Facie Case.

"A party seeking to modify custody [or parenting time] must demonstrate changed circumstances that affect the welfare of the [child]." Hand v. Hand, 391 N.J. Super. 102, 105 (App. Div. 2007). "Where there is already a judgment or agreement affecting custody in place, it is presumed it 'embodies a best interest[] determination' and should be modified only where there is a 'showing [of] changed circumstances which would affect the welfare of the [child].'" A.J. v. R.J., 461 N.J. Super. 173, 182 (App. Div. 2019) (quoting Todd v. Sheridan, 268 N.J. Super. 387, 398 (App. Div. 1993)). "Specifically, with respect to agreements between parents regarding custody or parenting time, '[a] party seeking modification . . . must meet the burden of showing changed circumstances and that the agreement is now not in the best interests of a child.'" Slawinski v. Nicholas, 448 N.J. Super. 25, 33 (App. Div. 2016) (quoting Abouzahr v. Matera-Abouzahr, 361 N.J. Super. 135, 152 (App. Div. 2003)).

Here, although an initial custody and parenting time determination has never been performed by a court because all previous orders were entered into by consent, the parties did agree to the current parenting time schedule and

defendant bore the initial burden of demonstrating a prima facie case of changed circumstances that potentially benefitted Molly.

The prima facie demonstration is not particularly onerous. See, e.g., Cardali v. Cardali, 255 N.J. 85, 108-09 (2023) ("As our case law recognizes, the prima facie showing is distinct from the final proofs that are the basis for an adjudication on the merits; it is simply a threshold showing. . . .").

It is expected a child's best interest changes over time. That is one of the reasons custody and parenting time orders are always reviewable and modifiable, see R. 5:8-6; Hoy v. Willis, 165 N.J. Super. 265, 275-76 (App. Div. 1978) ("Orders respecting custody and visitation are subject to modification at any time upon a showing of a material change in circumstances.") (citing Mimkon v. Ford, 66 N.J. 426, 438 (1975)), until a child reaches the age of eighteen, R. 9:2-13(b). Molly's maturation and entry into school, which affected her availability for parenting time with both parents, and defendant's ability to see her more often because he moved closer to her, established the requisite prima facie case of changed circumstances warranting review.

B. Whether a Plenary Hearing was Necessary.

Once a prima facie case of changed circumstances that may affect the best interest of the child has been demonstrated, the court must determine what is in

the child's current best interest, without relying on any previous court orders or agreements between the parties. The Family Part erred in denying defendant a best interest evaluation or a plenary hearing to assess the parties' contrary positions regarding parenting time. Specifically, the court failed to consider the change in the geographical distance between the parties that had occurred since the consent order was entered. It did not delve into any of the statutory factors to determine whether an alternate arrangement would be in Molly's best interest, including a failure to consider her new school schedule as potentially impacting parenting time. Instead, the court sent the parties to mediation. When that failed, it simply chose to keep the current parenting schedule in place based on the parties not getting along -- a common situation for litigating co-parents – and did not determine what was in Molly's best interest.

To be sure, a plenary hearing is not automatic upon a showing of changed circumstances, but a "thorough" one is required when mediation fails to resolve the custody or parenting time dispute, and materially conflicting factual allegations remain. J.G., 457 N.J. Super. at 372. Indeed, "the matter of [parenting time] is so important, especially during the formative years of a child, that if a plenary hearing will better enable a court to fashion a plan of [parenting time] more commensurate with a child's welfare . . . it should require it." Id. at

11

373. (third alteration in original) (footnote omitted) (quoting <u>K.A.F. v. D.L.M.</u>, 437 N.J. Super. 123, 138 (App. Div. 2014)).

<u>C. Whether the Trial Court Erred in Declining to Appoint a GAL.</u>

Defendant also contends the trial court erred in declining to appoint a GAL to assist in determining the child's best interest. We disagree.

The role of a GAL is "'to assist the court in its determination of the incompetent's or minor's best interest.'" <u>J.B. v. W.B.</u>, 215 N.J. 305, 332 (2013) (quoting <u>Adoption of a Child by E.T.</u>, 302 N.J. Super. 533, 539 (App. Div. 1997)). As the Supreme Court reiterated in <u>J.B.</u>,

> not every application affecting an unemancipated child requires appointment of a [GAL]. <u>See</u> R. 5:8B ("In all cases in which custody or parenting time/visitation is an issue, a [GAL] may be appointed . . . if the circumstances warrant such an appointment.") The decision to appoint a [GAL] is reposed in the discretion of the trial judge, and rightly so because the decision is informed by the experience the judge gains as the judge sifts through a daily docket of contested matters.
>
> [<u>Id.</u> at 333 (citing <u>In re M.R.</u>, 135 N.J. 155, 179 (1994)).]

Here, defendant broadly asserts "[t]he conduct of . . . plaintiff, and the negative impact that it . . . had on [Molly], justifie[d] the appointment of a [GAL]" with few specifics. We conclude defendant failed to substantiate any claim that Molly's health or safety was being threatened due to the current

12

parenting time schedule. DCP&P found no evidence of abuse occurring at plaintiff's household and declined to pursue further proceedings. Moreover, defendant did not seek a change of custody, only an increase in parenting time. The Family Part, at that juncture, did not need a GAL to determine what was in Molly's best interest and did not abuse its discretion in failing to appoint one. On remand, it remains within the Family Part's discretion as to whether a GAL would assist the court.

Finally, we note, in failing to find defendant had established a prima facie case warranting review of the parenting time schedule, the trial court relied upon the circumstances that the parties entered a second consent order in September 2018 and defendant moved to New Jersey six months later but took no legal action regarding his parenting time until September 2021, when he filed his motion. In denying defendant relief, the Family Part stated the fact that defendant moved to New Jersey almost three and a half years before filing an application for modification of the September 2018 consent order in September 2022 was controlling. It is important to recognize the OTSC was brought due to an allegation of abuse, not merely to modify parenting time. Regardless, there is no support in the law for the proposition that a parent waives his right to seek modification of parenting time by the mere passage of time. See Wilke v. Culp,

196 N.J. Super. 487, 499-500 (App. Div. 1984) (concluding the plaintiff-father's delay of approximately six years to formally appeal the suspension of parenting time insignificant). Defendant's delay does not supply legal authority for denial of a prima facie finding of a right to modify parenting time.

We vacate the orders appealed and remand for further proceedings consistent with this opinion before a different judge. See Freedman v. Freedman, 474 N.J. Super. 291, 308 (App. Div. 2023) (first citing J.L. v. J.F., 317 N.J. Super. 418, 438 (App. Div. 1999); and then citing P.T. v. M.S., 325 N.J. Super. 193, 220-21 (App. Div. 1999)). We take no position regarding whether or to what extent the current parenting plan should be modified. The Family Part, in its discretion, may enter an interim order regarding parenting time upon remand.

Reversed and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION