NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1326-17T2

J.G.,

     Plaintiff-Appellant,

v.

J.H.,

     Defendant-Respondent.

_____

APPROVED FOR PUBLICATION

January 2, 2019

APPELLATE DIVISION

Argued December 5, 2018 – Decided January 2, 2019

Before Judges Koblitz, Ostrer and Mayer.

On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Warren County, Docket No. FD-21-0329-14.

Grace E. Kelly argued the cause for appellant (Legal Services of Northwest Jersey, attorneys; Grace E. Kelly, on the brief).

Respondent has not filed a brief.

The opinion of the court was delivered by

KOBLITZ, P.J.A.D.

Because the welfare of children is paramount whether the parents are married, divorced or never-married, we reverse and remand for a plenary hearing

in this non-dissolution, FD, child custody matter. The mother, J.G. (Jane)[1] appeals from a custody and parenting time order entered after the judge denied discovery, denied Jane's lawyer the right to participate in the proceedings, did not afford cross-examination or an opportunity to call witnesses and decided the issues without fact-finding or a consideration of the statutory custody factors, N.J.S.A. 9:2-4(c).

When J.H. (John) was born in 2012, his parents were not married. Jane is a school teacher and J.H. (Joseph) an aid for special needs students. In 2014, an FD order reflected the parents' consent to joint legal custody of their son, primary residential custody with Jane, and generous parenting time for Joseph. The following year, the consent order was vacated because the parents attempted to reconcile. John continued to reside primarily with Jane, and the parents agreed on a flexible shared-parenting-time schedule.

The relationship between the parties eventually deteriorated, and Jane pursued a new relationship. She is now pregnant. Joseph alleges that on October 3, 2017, John was left alone with Jane's fiancé, who Joseph claims is a "well known drug user" and "convicted felon with multiple prison sentences."

---

[1] We use initials and pseudonyms to preserve the confidentiality of the family. R. 1:38-3(d)(13).

The next day, Joseph filed an order to show cause under the original FD docket number, seeking sole custody of John. As part of Joseph's emergent application, he alleged having received many reports of misbehavior by Jane and her fiancé, including drug usage and threatening behavior.

The court denied Joseph's order to show cause because Joseph failed to demonstrate irreparable or "actual imminent threat of harm to [John]." The court stated it "cannot grant emergent custody based on . . . uncorroborated statements . . . limited evidence . . . and such speculative harm." Nonetheless, it awarded Joseph temporary sole physical custody of John pending resolution of the application because "[t]here appears to be potential for violence in [Jane]'s home, which could spill over and adversely affect a four-year-old child."[2] The order provided that Jane could arrange for parenting time "supervised by the maternal grandmother" at a location outside of Jane's home.

Jane filed an order to show cause, alleging that John was suffering harm by his abrupt separation from her. The judge denied Jane's order to show cause as non-emergent, stating that "[w]hile [Jane] makes concerning certifications about [Joseph], she has not alleged with specificity any imminent harm."

---

[2] If "reasonable cause" regarding the child's safety arose, the judge should have contacted the Division of Child Protection and Permanency. N.J.S.A. 9:6-8.10.

A-1326-17T2

On October 24, 2017, Jane, her lawyer and Joseph appeared before another judge for the return on Joseph's initial order to show cause. The hearing judge placed both parties under oath and proceeded to go back and forth questioning them in an attempt to establish the facts. The parties contradicted each other about most of the important facts affecting John's welfare.

Jane's counsel, when afforded an opportunity to speak, requested the matter be placed on the complex track, but was rebuffed:

> [COUNSEL]: [I]n order for there to be a change of custody we would ask that this case be put on the complex track to allow for discovery --
>
> THE COURT: It's a -- it's an FD matter.
>
> [COUNSEL]: But if the court --
>
> THE COURT: It's not a divorce.
>
> [COUNSEL]: -- if the court were to put it on, it has the option to put it on the complex track according to [Rule 5:5-7(c)[3]], then discovery would be available as well as

---

[3] Rule 5:5-7(c) provides:

> Non-Dissolution Actions. While non-dissolution actions are presumed to be summary and non-complex, at the first hearing following the filing of a non-dissolution application, the court, on oral application by a party or an attorney for a party, shall determine whether the case should be placed on a complex track. The court, in its discretion, also may make such a

A-1326-17T2

depositions because I mean a lot of these accusations .
. . .

After denying the request to place the matter on the complex track, the hearing judge responded to counsel's later attempt to speak on behalf of Jane by stating, "I'm asking [Jane,] not you." The judge asked the parties what arrangement they preferred, and when they could not agree, he set the parenting schedule.

The judge ordered joint legal and physical custody, with Joseph having primary residential custody. John spent the night with his father Monday through Friday, Jane was afforded parenting time with John after school Monday through Thursday, and the parties were to alternate parenting time "every other weekend."[4] The judge also prohibited Jane's fiancé from being alone with John. After Jane voiced concern about the disruption in her son's life caused by this

determination without an application from the parties. The complex track shall be reserved for only exceptional cases that cannot be heard in a summary matter. The court may assign the case to the complex track based only on a specific finding that discovery, expert evaluations, extended trial time or another material complexity requires such an assignment.

[4] Contrary to the judge's verbal order, the written order provides that the "parties shall share weekends, with [Jane] having at least one overnight visit with [John] on the weekend."

change in primary residential custody, the motion judge said that John had "already been uprooted." No further reasons were provided.

## I. Pre-Hearing Requirements

As with other custody matters, prior to a plenary hearing, the parties should have been sent to mediation, Rules 1:40-5 and 5:8-1, and, if they were unable to resolve the issues, they should have been required to submit a Custody and Parenting Time/Visitation Plan pursuant to N.J.S.A. 9:2-4(e), Rule 5:8-5(a) and Luedtke v. Shobert (Luedtke), 342 N.J. Super. 202, 218 (App. Div. 2001). The required procedures for custody and parenting time cases are outlined in Administrative Directive #01-02, "Standards for Child Custody and Parenting Time Investigation Reports" (Apr. 2, 2002), and include use of alternate dispute resolution, followed by an investigation report when "conflicting information from the parties make it difficult to make a determination in the best interest of the child regarding custody/shared parenting time." A Social Investigation Report should be ordered where "conflicting information regarding which parent can serve the long term best interest of the child is presented before the court but the psychological fitness of both parties is not in question."[5] Ibid.

---

[5] "Completion of the Best Interest Report may require the assistance of Family Court staff in a county other than the county where the orde[r] was entered."

A-1326-17T2

Upon counsel's request to place the matter on the complex track, the judge denied the request because "it's an FD matter. It's not a divorce." "Whether the case is designated as complex or handled as a summary action, Family Part judges have broad discretion to permit, deny, or limit discovery in accordance with the circumstances of the individual case." Major v. Maguire, 224 N.J. 1, 24 (2016). For the judge to deny discovery without further explanation was improper.

In sum, before a hearing took place, the parties should have been sent to an alternate dispute resolution process and directed to furnish a proposed parenting plan if they could not resolve custody. Discovery should have been allowed, absent cogent reasons for denial. Finally, an investigative report should have been prepared by court staff. The judge needed this information to make a considered decision.

## II. Plenary Hearing

A thorough plenary hearing is necessary in contested custody matters where the parents make materially conflicting representations of fact. K.A.F. v. D.L.M., 437 N.J. Super. 123, 137-38 (App. Div. 2014). In K.A.F. we said:

---

Non-Dissolution Operations Manual, Superior Court of New Jersey, Family Division, § 1601 (Dec. 12, 2007).

A court, when presented with conflicting factual averments material to the issues before it, ordinarily may not resolve those issues without a plenary hearing. While we respect the family court's special expertise, a court may not make credibility determinations or resolve genuine factual issues based on conflicting affidavits. . . . Moreover, a plenary hearing is particularly important when the submissions show there is a genuine and substantial factual dispute regarding the welfare of children.

[Ibid. (citation omitted).]

"[T]he matter of visitation[6] is so important, especially during the formative years of a child, that if a plenary hearing will better enable a court to fashion a plan of visitation more commensurate with a child's welfare . . . it should require it." Id. at 138 (quoting Wagner v. Wagner, 165 N.J. Super. 553, 555 (App. Div. 1979)); see also Faucett v. Vasquez, 411 N.J. Super. 108, 118-19 (App. Div. 2009) (stressing the need for a plenary hearing even prior to a temporary modification of custody).

The proceeding that took place did not constitute a plenary hearing. The motion judge asked the parents questions, going back and forth between them. He did not allow Jane's counsel to participate meaningfully in the proceedings.

---

6 Visitation is now referred to as "parenting time." See Pascale v. Pascale, 140 N.J. 583, 588 (1995).

A-1326-17T2

The parents were not given an opportunity to exchange discovery, retain an expert witness, call witnesses or cross-examine each other.

A parenting time "decision . . . made without an evidential basis, without examination and cross-examination of lay and expert witnesses, and without a statement of reasons is untenable in the extreme." Fusco v. Fusco, 186 N.J. Super. 321, 327 (App. Div. 1982).

> There are obviously few judicial tasks which involve the application of greater sensitivity, delicacy and discretion than the adjudication of child custody disputes, which result in greater impact on the lives of those affected by the adjudication, and which require a higher degree of attention to the properly considered views of professionals in other disciplines. . . . That is also why the parties must be afforded every reasonable opportunity to introduce expert witnesses whose evaluation of the family situation may assist the judge in determining what is best for the children.
>
> [Fehnel v. Fehnel, 186 N.J. Super. 209, 215 (App. Div. 1982).]

The judge must allow the parties cross-examination. N.B. v. S.K., 435 N.J. Super. 298, 308 n.12 (App. Div.2014) (finding error where the trial judge barred the plaintiff from cross-examining the defendant because "courts must be vigilant to ensure that parties' procedural due process rights are maintained"); Peterson v. Peterson, 374 N.J. Super. 116, 124 (App. Div. 2005) (criticizing the trial court's "failure to afford defendant essential procedural safeguards

9

including the right to cross-examine adverse witnesses and the right to call witnesses in his own defense" as well as the general "informality of the proceedings").

The motion judge engaged in questioning of both parties. Jane's counsel attempted to speak on her behalf and was repeatedly rebuffed. The motion judge said that he was "relaxing the rules of evidence" when Jane's counsel objected to Joseph's testimony regarding her fiancé's threatening Facebook posts. Jane's mother was not explored as a possible witness although she was present at the hearing, even though the parties disputed whether she should care for John in light of her health.

Busy FD calendars and the summary nature of many FD applications might encourage the misperception that any dispute labeled FD rather than FM, or divorce, requires fewer judicial resources. Thoughtful consideration of the importance to any child of custody and parenting time decisions, however, dictates the necessity of looking past the docket designation to the nature of the dispute. No court had previously determined custody for this family, the parties no longer agreed that Jane should retain primary residential custody, and it was crucial that a fair process be used to ensure the best possible outcome for John.

### III. Fact-findings and Reasons Required

The motion judge also erred by failing to make fact-findings and apply those facts to the custody factors provided in N.J.S.A. 9:2-4(c). "When a court orders a custody arrangement that is not agreed to by both parents, it must identify on the record the specific factors that justify the arrangement." Bisbing v. Bisbing, 230 N.J. 309, 322 (2017) (citing N.J.S.A. 9:2-4(f)).

"The touchstone for all custody determinations has always been 'the best interest[s] of the child.'" Faucett, 411 N.J. Super. at 118 (alteration in original) (quoting Kinsella v. Kinsella, 150 N.J. 276, 317 (1997)). "Custody issues are resolved using a best interests analysis that gives weight to the factors set forth in N.J.S.A. 9:2-4(c)." Hand v. Hand, 391 N.J. Super. 102, 105 (App. Div. 2007).

N.J.S.A. 9:2-4, addressing "any proceeding involving the custody of a minor child," provides:

> In making an award of custody, the court shall consider but not be limited to the following factors: the parents' ability to agree, communicate and cooperate in matters relating to the child; the parents' willingness to accept custody and any history of unwillingness to allow parenting time not based on substantiated abuse; the interaction and relationship of the child with its parents and siblings; the history of domestic violence, if any; the safety of the child and the safety of either parent from physical abuse by the other parent; the preference of the child when of sufficient age and capacity to reason so as to form an intelligent decision; the needs

11

of the child; the stability of the home environment offered; the quality and continuity of the child's education; the fitness of the parents; the geographical proximity of the parents' homes; the extent and quality of the time spent with the child prior to or subsequent to the separation; the parents' employment responsibilities; and the age and number of the children. A parent shall not be deemed unfit unless the parents' conduct has a substantial adverse effect on the child.

[N.J.S.A. 9:2-4(c).]

Both parties alleged facts that raised concerns about John's safety with the other parent. These facts were not substantiated beyond the parties' conflicting certifications and testimony, without cross-examination, before the judge. They alleged illegal drug use by the other parent, a break-in attempt at Jane's home, and Jane having been stalked and threatened. Many of John's allegations were based on what he had heard from others rather than his personal knowledge.

The hearing judge made no mention, either on the record or in the written order, of the child's best interests or any of the factors in N.J.S.A. 9:2-4(c). John had resided primarily with his mother for most of his life. After questioning both parties, the judge said only: "Okay. Here's what I'm going to do," before setting forth a new parenting time arrangement, granting Joseph primary residential custody of the four-year-old boy. The only explanation the judge offered for his decision was that John had "already been uprooted," so this plan

12

would not cause further disruption to the young child. We remand to be assigned to a different judge, in an excess of caution, because this judge may have formed a view of the situation through these proceedings. R. 1:12-1(d).

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION