# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3625-20

M.L.,[1]

     Plaintiff-Appellant/
Cross-Respondent,

v.

C.H.,

     Defendant-Respondent/
Cross-Appellant.

_____

Submitted March 3, 2022 – Decided March 11, 2022

Before Judges Haas and Mawla.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Camden County, Docket No. FD-04-1706-20.

Sherman, Silverstein, Kohl, Rose & Podolsky, PA, attorneys for appellant/cross-respondent (Kristofer B. Chiesa, on the briefs).

---

[1] We use the parties' initials pursuant to Rule 1:38-3(d)(3).

Tonacchio, Spina & Compitello, attorneys for respondent/cross-appellant (Jeremy S. Price, on the brief).

PER CURIAM

Plaintiff M.L. appeals and defendant C.H. cross-appeals from a July 13, 2021 order adjudicating disputes over custody, parenting time, tax exemption designation, and child support related to their son. We reverse and remand for further proceedings consistent with this opinion.

We glean from the record that the parties have been to court several times since the birth of their son in 2019. Plaintiff is employed as a corrections officer and does not work from Wednesdays to Sundays, and defendant is employed part-time at a convenience store with a flexible work schedule.

On August 13, 2020, the parties appeared before the trial judge at a telephonic hearing to have the court adjudicate custody and parenting time following a failed mediation. The child was then nearly ten months old, and according to the record, plaintiff enjoyed one day of parenting time with him per week.

Defendant argued plaintiff should not get more parenting time because the child was experiencing digestive problems and had a special diet. She asserted the child could not adequately communicate in the event he was in pain, and it

was in his best interests that she care for him given her experience and the child's young age. She argued plaintiff's lifestyle, including alleged substance abuse and the lack of amenities in his home, such as a baby crib, made it unsafe for him to have parenting time.

Plaintiff argued defendant used the child's condition as a means of depriving him access and did not share doctor's appointments with him to exclude him from his son's life. Plaintiff denied any substance abuse and noted he is drug tested by his employer. He pointed out defendant saw the crib when she went to his home, and his mother was an experienced nurse capable of assisting him with the child's health issues.

The trial judge noted the medical evidence defendant supplied showed the child had a "constipation issue." He found the condition was neither party's fault; nor was it a condition either of them could not handle. There was no evidence plaintiff could not care for the child or that "the child would be necessarily safer with [defendant] . . . ." The judge noted each party had equal rights and he was "not going to . . . freeze [plaintiff] out until some point somebody decides the child is old enough to safely be with [plaintiff]." He concluded the child needed stability in his life and "has to have quality time with

[plaintiff] and [defendant]" and plaintiff was "entitled to a reasonable amount of time, including overnights."

The judge granted plaintiff parenting time on alternating weekends from Saturday to Sunday and one midweek overnight every week from Wednesday to Thursday. He envisioned increased parenting time as the child got older and added: "[T]he age of the child I think warrants the stability of this arrangement and limited time for the reasons that I've stated." On August 18, 2020, the judge issued a written order, which differed from his oral findings, stating the midweek overnight would occur every other Wednesday.

In May 2021, plaintiff filed a motion for enforcement and modification of the August order. In pertinent part, he sought the following relief: increasing parenting time to fifty-fifty; alternating the child as a dependent on the parties' income tax returns; and two non-consecutive weeks of vacation time with the child for each party.

Plaintiff argued it was time to increase his parenting time because the child was older and defendant refused to cooperate. He certified defendant permitted midweek parenting time only on an alternating week basis despite the judge's oral ruling midweek parenting time would occur weekly. Citing his availability due to his work schedule, he proposed parenting time every

Wednesday to Saturday and an overnight every other Saturday to Sunday. As for enforcement, plaintiff noted defendant continued to exclude him from the child's medical appointments and failed to communicate regarding the child's dietary needs. He argued the parties should alternate claiming the child as a dependent because defendant claimed the child on her taxes for two years and he anticipated receiving more overnights.

Defendant filed a notice of cross-motion asking the court to deny plaintiff's requests and sought an order "[e]nforcing a prior request for support heretofore before [the trial judge] but never adjudicated." Her certification disputed each assertion in plaintiff's certification. She argued plaintiff should not have more parenting time because the child was "diagnosed on the early level of spectrum of autism and it is recommended by his doctors that a strict regimentation without change would be effective in attempting to stop this before it becomes uncontrollable." Defendant opposed overnight parenting time claiming, "the child comes home without medical care, without his medication being provided and unfortunately, in a very tense and nervous situation which takes me several hours to calm him." She claimed the child was too young to increase parenting time and that any increase, including vacation parenting time, should occur when he "reaches a school age[.]"

A-3625-20

Defendant claimed she shared the child's medical appointment information with plaintiff and he failed to attend the appointments. She opposed alternating the exemption because plaintiff did not pay child support and because she needed it more than him.

Plaintiff's reply certification noted defendant provided no documentation substantiating the child's alleged autism diagnosis. He had "no issue paying [c]hild [s]upport pursuant to the Child Support Guidelines" and attached his paystubs and W-2.

The trial judge heard the matter on July 12, 2021. He noted there was no question he ordered midweek parenting time to occur every week. His review of the record showed the child's digestive issues were being addressed and found as follows:

> But I am recognizing [defendant] is bringing [the] child to appointments and the like and I think the parenting time schedule needs to reflect that.
>
> . . . [B]ut the child will be three soon. There's issues here. But I haven't seen anything that tells me that . . . this is something that [plaintiff] is incapable of handling or [defendant], for that matter. Does that automatically mean that it's a [fifty-fifty]? No. Because we have [to] take into consideration . . . the best interest of the child . . . [and] make sure that we maybe even get to the bottom of the issues with the child. There's talk of speech problems, food problems, the pre-autistic . . . component that's been argued by

6

[defendant]. So, . . . we really need to better understand exactly what's going on there.

Other than to correct the error relating to the mid-week overnight, the judge declined to increase parenting time. He granted the parties summer vacation time and ordered them to alternate the exemption beginning with plaintiff claiming it for 2021. The judge attempted to address child support, but court staff informed him the matter was "not entitled as a support case." The judge explained "[t]here is a[] IV[-D] application that needs to be made and there's a lot of administrative things[,]" and declined to address the request until defendant made the application.

Plaintiff raises the following points on appeal:

> I. THE TRIAL COURT ERRED BY FAILING TO MAKE FACT FINDINGS AND APPLY SAID FINDINGS TO THE CUSTODY FACTORS SET FORTH IN N.J.S.A. 9:2-4(c).
>
> II. THE TRIAL COURT ERRED IN CONSIDERING ALLEGED MEDICAL DIAGNOSES OF THE MINOR CHILD THAT WERE NOT SUPPORTED BY MEDICAL RECORD, DOCTOR CERTIFICATION OR OTHERWISE WHEN SETTING THE PARENTING TIME SCHEDULE.

Defendant raises the following points on her cross-appeal:

> III. THE COURT IMPROPERLY ORDERED A MODIFICATION OF FEDERAL LAW AS IT

7

APPLIES TO FEDERAL INCOME TAX
DEPENDENCY CLAIMS.

IV. THE COURT FAILED TO CALCULATE
CHILD SUPPORT.

I.

Our scope of review of the Family Part's factfinding function is limited.
N.J. Div. of Youth & Fam. Servs. v. L.J.D., 428 N.J. Super. 451, 476 (App. Div.
2012). Factual findings "are binding on appeal when supported by adequate,
substantial, credible evidence." O'Connor v. O'Connor, 349 N.J. Super. 381,
400-01 (App. Div. 2002) (citing Cesare v. Cesare, 154 N.J. 394, 411-12 (1998)).
We owe no deference to the trial court on questions of law. N.J. Div. of Youth
& Fam. Servs. v. V.T., 423 N.J. Super. 320, 330 (App. Div. 2011).

II.

Our Supreme Court explained custody is comprised of legal and physical
custody. Pascale v. Pascale, 140 N.J. 583, 596 (1995); see also N.J.S.A. 9:2-4.
The Court stated "'joint physical custody' means that the child lives day in and
day out with both parents on a rotating basis" and is rare. Id. at 597. "Although
both [legal and physical custody] create responsibility over children of
[separated parents], the primary caretaker has the greater physical and emotional
role." Id. at 598. The Court stated: "[T]he many tasks that make one parent the

primary, rather than secondary, caretaker [include]: . . . purchasing, cleaning, and caring for clothes; medical care, including nursing and general trips to physicians; arranging for social interaction among peers; . . . disciplining; and educating the child . . . ." Id. at 598-99. The secondary caretaker role is equally important and exercised by means of a parenting time schedule befitting the circumstances of the case. Id. at 597.

Our Legislature declared it "public policy . . . to assure minor children of frequent and continuing contact with both parents after the parents have separated . . . and that it is in the public interest to encourage parents to share the rights and responsibilities of child rearing in order to effect this policy." N.J.S.A. 9:2-4. The statute further provides "the rights of both parents shall be equal" and grants the court authority to assure those rights by means of awarding joint, sole, or "any other" legal and physical custody arrangement that is in the child's best interests. Ibid. Where parents cannot agree on arrangement, the court must apply the facts of the case to the statutory factors set forth in N.J.S.A. 9:2-4(c). J.G. v. J.H., 457 N.J. Super. 365, 374 (App. Div. 2019). Moreover, "the matter of [parenting time] is so important, especially during the formative years of a child, that if a plenary hearing will better enable a court to fashion a plan of [parenting time] more commensurate with a child's welfare . . . it should

require it." Id. at 373 (quoting K.A.F. v. D.L.M., 437 N.J. Super. 123, 138 (App. Div. 2014)).

The trial judge's fact findings lack any reference to the statutory factors and did not parse the contested facts. Plaintiff sought a greater parenting role and defendant's opposition to his request for parenting time was hotly contested. This did not mandate the judge order joint physical custody because, contrary to plaintiff's arguments on appeal, there is no presumption of joint physical custody. However, the judge's reasoning was contradictory. He rejected defendant's arguments that the child's medical condition or plaintiff's ability to handle it was cause to limit parenting time, yet appeared to point to the child's medical treatment as the basis for not increasing parenting time. At the 2020 hearing, the judge stated he would increase parenting time as the child matured and seemingly rejected defendant's assertion that parenting time should not be modified until the child was school age, yet he did the opposite in the 2021 order—all without an explanation.

We appreciate the difficulties in deciding a contested custody and parenting time case, but that is why the Legislature adopted the statutory factors as a guide for consideration of a child's best interests. Neither the record nor the limited findings that were made support the conclusion the July 2021 order

was in the best interests of the parties' child. For these reasons, we are constrained to reverse and remand for the trial judge to conduct a plenary hearing and make further findings.

III.

We reject defendant's argument the judge misapplied the law when he ordered the parties to alternate the tax exemption. A Family Part judge's power to allocate the child tax exemption is settled law. Gwodz v. Gwodz, 234 N.J. Super. 56, 62 (App. Div. 1989). However, in designating which parent shall claim the exemption the trial judge must "consider or . . . quantify the effect of [the allocation] upon each party" and its effects on child support. Ibid. The record lacks these findings, and the judge appeared to give plaintiff the exemption only because defendant took it in the preceding years. Because this was a contested issue, clearer findings were necessary.

Finally, the judge declined to address child support because court staff informed him the matter was "not entitled as a support case." The judge then explained he could not order child support because "[t]here is an IV[-D] application that needs to be made."

Rule 5:7-11(a) requires any party seeking enforcement of child support by the Probation Division to submit a Title IV-D application and fee. Although it

11

is typical that child support flow through Probation, the record does not reveal defendant sought the payment of support through Probation. Indeed, her notice of cross-motion asked the court address "a prior request for support heretofore before [the trial judge] but never adjudicated." Her certification made no request for payment through Probation.

Regardless, the right to child support belongs to the child. Martinetti v. Hickman, 261 N.J. Super. 508, 512 (App. Div. 1993). The parties' child has been without a formal support order since birth, both parties were prepared to address the issue, and the judge had the power to do so without the IV-D application. For these reasons, we remand the issue for reconsideration.

Reversed and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

12

A-3625-20