**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1924-23

O.M.,

    Plaintiff-Respondent,

v.

R.T.,

    Defendant-Appellant,

and

E.T.,

    Defendant.

_____

        Submitted July 9, 2024 – Decided July 29, 2024

        Before Judges Gilson and Smith.

        On appeal from an interlocutory order of the Superior Court of New Jersey, Chancery Division, Family Part, Burlington County, Docket No. FD-03-0348-24.

        Law Office of Thomas J. Hurley, LLC, attorneys for appellant (Thomas J. Hurley, on the briefs).

Martine, Katz Scanlon & Schimmel, PA, attorneys for respondent (Sarah Martine Belfi and Briana Hamm Ahner, on the briefs).

PER CURIAM

We grant leave to appeal a January 18, 2024 order directing unification therapy between plaintiff and a twelve-year-old child. Plaintiff had only recently been discovered to be the biological father of the child. Thus, the question presented on this appeal is what are the appropriate procedures that should be followed to introduce the newly-discovered biological father to a child who, for most of his life, was raised believing that another man was his biological father.

The record establishes that the parties were originally pursuing an appropriate course of action that included (1) retaining an expert therapist to meet with the biological father, the psychological father, the mother, and the child; (2) the expert then preparing a report and making recommendations to the court; and (3) the court thereafter considering appropriate steps, including ordering unification therapy and determining custody issues.

Unfortunately, the expert therapist originally appointed could not serve. Thereafter, the parties were not able to agree on a new expert therapist. Ultimately, the family court entered the January 18, 2024 order directing

unification therapy without an initial expert evaluation. Given these facts, we vacate the January 18, 2024 order and remand this matter with direction that the family court proceed as originally planned. That is, (1) the court is to appoint an expert therapist to individually meet with the biological father, biological mother, the psychological father, the child, and other appropriate persons, including the two step-siblings and experts already working with the family; (2) the expert is then to prepare a report making recommendations to the court; and (3) the court can then consider if, how, and when unification therapy should be conducted between plaintiff and the child. Once the family court receives the expert therapist's report and makes the determination on unification therapy, the court can use its discretion to consider the psychological father's request for discovery concerning the biological father.

## I.

We discern the facts from the record presented on this appeal.

The child, A.T. (Alan), was born in June 2012.[1] E.T. (Edith) is Alan's biological mother. R.T. (Roy) and Edith were married in March 2013. From Alan's birth, Roy believed he was Alan's biological father and acted as Alan's

---

[1] Because of the privacy issues involved with this custody dispute over a minor child, we use initials and fictitious names. See R. 1:38-3(d).

A-1924-23

father by assuming the responsibilities for his care and support. For approximately the next ten years, Roy continued to believe he was Alan's biological father and continued to care for and provide for Alan. During that time, Roy and Edith had two children together: sons who were born in October 2013 and July 2016.

Sometime in or around 2022, Roy learned that he was not Alan's biological father.[2] In December 2022, Edith filed a complaint to divorce Roy based on irreconcilable differences. In February 2023, after having learned that O.M. (Orlando) might be Alan's biological father, Roy filed an answer and counterclaims seeking to compel Orlando's testimony and subject him to the family court's jurisdiction for discovery purposes. Thereafter, a paternity test confirmed that Orlando was Alan's biological father. Roy then filed a separate counterclaim requesting to annul the marriage under N.J.S.A. 2A:34-1.

Orlando moved to intervene in the divorce action. At approximately the same time, Roy moved for certain relief concerning Alan, including discovery from Orlando. In response to those motions, the family court entered an order on September 21, 2023 (the September 2023 order). In that order, the court,

---

[2] The parties are not precise in identifying when Roy learned that Alan was not his biological son.

 A-1924-23

among other things, (1) recognized Roy as Alan's psychological father; (2) recognized Orlando as Alan's biological father; (3) appointed a therapist, Shelly Lukoff, to interview Roy, Edith, Orlando, Alan, and the two other sons; (4) directed Lukoff to consult with Dr. Harry Green, who was acting as a custody evaluator in the divorce action, and then to prepare reports with Dr. Green to be submitted to the court; and (5) denied in part Orlando's request to intervene in the divorce action and instead directed Orlando to file a separate family dissolution (FD) matter to address the custody and parenting time concerning Alan.

Shortly after her appointment, Lukoff informed the parties that she could not serve as the therapist. Thereafter, the parties could not agree on a new therapist. In November 2023, Orlando moved in the FD matter to appoint a new therapist, Dr. Danielle Forshee. Orlando also iterated his request for unification therapy with Alan.

On January 18, 2024, the family court entered an order in the FD action directing, among other things, (1) Orlando and Alan to engage in unification therapy with Dr. Forshee; and (2) denying without prejudice Roy's request for discovery concerning Orlando.

In the meantime, in December 2023, a judgment of nullity (JON) was entered in the divorce action between Edith and Roy. The JON nullified Edith and Roy's marriage under N.J.S.A. 2A:34-1(1)(d). Edith and Roy also signed a Property Settlement Agreement (PSA). Under the PSA, Edith and Roy agreed that Roy was Alan's psychological father. They also agreed that they would share joint legal custody of Alan, as well as their other two sons. In addition, Edith and Roy agreed that Roy would be the parent of primary residential custody for Alan and Alan's two brothers and that Edith would enjoy parenting time with the children. Orlando contended that he was not notified of the custody arrangements agreed to in the PSA.

Following the entry of the January 18, 2024 order, Roy moved to stay that order. The family court denied that motion. Roy then filed a motion with us to stay the January 18, 2024 order. On May 9, 2024, we granted that stay. We also directed Roy to file a motion for leave to appeal the January 18, 2024 order. Further, we directed all parties to file briefs addressing the merits of the appeal of the January 18, 2024 order, including the proper procedures to be conducted before unification therapy commenced. We also informed the parties that we would list this matter for plenary consideration on our July 9, 2024 calendar.

We now grant leave to appeal the January 18, 2024 order.

A-1924-23

## II.

A review of the papers submitted on this appeal establishes that the parties had originally consented to appropriate procedures to introduce Orlando to Alan as his biological father. Those procedures, which were set forth in the September 2023 order, included: (1) the retention of an appropriate expert; (2) an investigation by the expert and custody evaluator; (3) a report from the expert to the court making recommendations, including if, how, and when unification therapy should be conducted; and (4) further consideration of issues related to the custody and support of Alan.

Apparently because of a breakdown in communication among the parties, those procedures have not been implemented. Instead, the January 18, 2024 order mandated unification therapy without an appropriate evaluation of if, when, and how that unification therapy should be conducted.

Given the facts of this case, appropriate procedures are necessary before Orlando and Alan engage in unification therapy. Before ordering reunification sessions to begin, family courts should hold a plenary hearing, consider submissions from all parties addressing the child's best interests, and facilitate an interview of the child. See P.T. v. M.S., 325 N.J. Super. 193, 213 (App. Div. 1999). Courts "rely heavily on the expertise of psychologists and other mental

A-1924-23

health professionals" when considering evidence concerning the child's best interests.  Kinsella v. Kinsella, 150 N.J. 276, 318 (1997).  When determining whether to order unification therapy, family courts should also consider the same factors they consider when evaluating child custody issues.  See N.J.S.A. 9:2-4(c).  Those factors include:  (1) "the parents' ability to agree, communicate and cooperate in matters relating to the child;" (2) "the parents' willingness to accept custody and any history of unwillingness to allow parenting time not based on substantiated abuse;" (3) "the interaction and relationship of the child with its parents and siblings;" (4) "the history of domestic violence, if any;" (5) "the safety of the child and the safety of either parent from physical abuse by the other parent;" (6) "the preference of the child when of sufficient age and capacity to reason so as to form an intelligent decision;" (7) "the needs of the child;" (8) "the stability of the home environment offered;" (9) "the quality and continuity of the child's education;" (10) "the fitness of the parents;" (11) "the geographical proximity of the parents' homes;" (12) "the extent and quality of the time spent with the child prior to or subsequent to the separation;" (13) "the parents' employment responsibilities;" and (14) "the age and number of the children." Ibid.; see also J.G. v. J.H., 457 N.J. Super. 365, 375 (App. Div. 2019) (explaining that "[c]ustody issues are resolved using a best interests analysis that

8                                                                    A-1924-23

gives weight to the factors set forth in N.J.S.A. 9:2-4(c)" (quoting Hand v. Hand, 391 N.J. Super. 102, 105 (App. Div. 2007))); R. 5:8-1. These factors can be appropriately modified or tailored to address a situation involving a newly-discovered biological father, a psychological father, a biological mother, and a child.

We, therefore, vacate the January 18, 2024 order and remand with direction that the family court (1) appoint an expert to conduct an evaluation; (2) ensure that evaluation includes interviews with Roy, Edith, Orlando, Alan, and, if appropriate, the other two children; (3) direct the expert to also consult with Dr. Green and any other therapists or consultants who have worked with the family; and (4) direct the expert to then prepare a report making recommendations to the court on if, when, and how unification therapy between Orlando and Alan should be conducted. Thereafter, the court can address the custody and support issues related to Alan and Roy's request for discovery concerning Orlando.

We discern no basis to question the selection of Dr. Forshee. The record demonstrates that Dr. Forshee is qualified to serve as the expert therapist. Dr. Forshee, however, must engage in the preliminary evaluations required by this opinion. Hopefully, if the procedures are properly followed and the evaluation

supports unification therapy between Orlando and Alan, Alan will benefit by having the love and support of Roy, Orlando, and Edith. We also hope the parties focus on and work together in Alan's best interests because a child can also benefit by having more love.

Reversed and remanded consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1924-23