# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0521-23

A.K.,

    Plaintiff-Appellant,

v.

T.A.,

    Defendant-Respondent.

_____

          Submitted September 19, 2024 – Decided October 1, 2024

          Before Judges Mawla and Vinci.

          On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Passaic County, Docket No. FV-16-2344-23.

          Williams Law Group, LLC, attorneys for appellant (Alvin Eugene Richards, III, of counsel and on the brief).

          Respondent has not filed a brief.

PER CURIAM

Plaintiff A.K. [1] appeals from the Law Division's September 26, 2023 order dismissing her temporary restraining order (TRO) pursuant to the Prevention of Domestic Violence Act, N.J.S.A. 2C:25-17 to -35 (PDVA), against defendant T.A. The court granted defendant's Rule 4:37-2(b) motion for involuntary dismissal following the presentation of plaintiff's testimony based on its determination that her testimony was not credible. Because the court made credibility findings on defendant's motion for involuntary dismissal instead of applying the extremely indulgent standard set forth in Rule 4:37-2(b), we are constrained to reverse and remand for a new trial.

The parties are married but separated and living apart. On April 26, 2023, plaintiff filed a domestic violence complaint alleging assault, criminal coercion, sexual assault, criminal trespass, harassment, and stalking, and was granted a TRO.

In her complaint, plaintiff alleged that on April 19, 2023, defendant came to her home when she was not there and waited in the parking lot of a convenience store adjacent to her home until she arrived. Defendant knocked on the door and plaintiff did not answer. Defendant attempted unsuccessfully to contact plaintiff by calling her son and stating he was there to deliver a

---

[1] We utilize initials to protect the confidentiality of the parties. R. 1:38-3(d)(9).

birthday present to plaintiff. Defendant remained parked outside plaintiff's home until approximately 1:00 a.m. Plaintiff alleged she "has told [defendant] to not come to her home and to stop contacting her but [he] fails to adhere."

Plaintiff also alleged "[approximately] [one] month ago[,] [defendant] came to [plaintiff's] home and sexually assaulted" her. She contended, "[defendant] has been contacting [her] relatives in other countries stating [she] is a bad woman who steals his money, a bad mother[,] and that her children are bad as well" and as a result "many of her relatives do not speak to her."

Plaintiff alleged "[defendant] threatened [that] if she did[ not] continue with the immigration paperwork and [do] as he said[,] he will tell everyone that the reason [plaintiff's] daughter is not in her home is because [plaintiff's] father sexually abused her, which is false[.]" Defendant further threatened that "[defendant] and his family will get [plaintiff] and her children."

On September 26, 2023, the court conducted a trial on plaintiff's application for a final restraining order (FRO). Before the trial began, plaintiff's counsel requested an adjournment because she was retained the day before and needed time to prepare for trial. The court denied the adjournment request because "the complaint was filed . . . in mid-April" and plaintiff "ha[d] been [in court] multiple times and . . . decided yesterday to retain counsel."

3

Plaintiff testified, through an Arabic interpreter, that defendant "raped [her]" on April 19, 2023, and also "the day before . . . ."  According to plaintiff, defendant was "forcing [her] to have sex with him" by "alleg[ing] that he needs to help [her], especially [because she] was suffering . . . because of [her] daughter's story."  Plaintiff testified that on April 19, she:

> [W]as pregnant at that time.  When [she] kicked [defendant] out of the house he tried to do many reconciliation[s].  He was not living with [them].  So he came just to help [her].  He said that he wants to help [her].  [Plaintiff and defendant] were in the living room.  The kids went up to their bedroom.  Then [defendant] push[ed her] into the couch and he tried to . . . have sex with [her] and he did not leave [her] alone.

According to plaintiff, she told defendant she had text messages in which he was "forcing [her] to have a sexual relationship . . . [and] he expressed his remorse and was sorry."  Plaintiff testified, "according to [their] culture, he[ is] [her] husband so . . . he own[s] [her] and he can do anything to [her]."

 Plaintiff contended, defendant "called [plaintiff's] dad" and said "[plaintiff] . . . told [defendant] that [plaintiff's dad] sexually harassed her and her sibling too when she was young.  And if [plaintiff] does[ not] do what [defendant] want[ed] to, [he would] . . . expose everything."  Defendant threatened to "expose [plaintiff]. And then [defendant] set up a Facebook account and start[ed] adding [plaintiff's] family [and] . . . [her] cousins."

A-0521-23

Plaintiff also testified that "two days prior to" April 19, defendant came into her house and she told defendant plaintiff and her children "were not feeling comfortable in his presence." Defendant responded that plaintiff was "acting and . . . making up stories." Plaintiff "told him to leave the house, but he did not." Plaintiff testified she "f[ound] out later that [defendant] stole [her] document[s] . . . and [her] [mini]van key," because she found copies of "all [her] documents, [her] social security, [her] birth certificate, also [her] parents' immigration work paper" in her minivan.

On cross examination, plaintiff was confronted regarding alleged inconsistencies between her complaint and her trial testimony. Specifically, we note the following colloquy between plaintiff and defendant's counsel:

> Q: Are you aware that around April 19[] . . . 2023 you signed for a [TRO] that does[ not] mention any assault happening on April 19[] of this year?
>
> A: I came to the judge and told him what is happening. I was broken down. Broken down. I was crying. So I came to the courthouse upon the attorney's advice and he told [me] to go to the court. So I went to the court, I saw the judge, and he gave me the TRO based on what I said. I do [not] know what domestic violence [is] and I do [not] know what is a TRO. . . .
>
> . . . .

5

> Q: When you requested that [TRO], did you allege to the judge that [defendant] had assaulted you?
>
> A: Yes. The judge ask[ed] me and I told him yes.

Plaintiff's counsel attempted to refresh plaintiff's recollection by reviewing the TRO with her, but the court denied the request. The court stated, it "would normally do that" and "[i]t is something which typically is done," but advised counsel the court was "not going to do it" and would "tell [counsel] why later on."

Plaintiff's counsel also attempted to introduce the text messages referenced in plaintiff's testimony, but the court denied the request because counsel did not have the text messages prepared as a trial exhibit. Counsel explained that she did not have exhibits prepared because she did not have enough time to go through the "fairly large file" she received from plaintiff the day before. According to counsel, "[t]hat was part of the reason why [she] requested an adjournment."

After ruling plaintiff would not be permitted to introduce the text messages, the court asked defense counsel if she "[had] an application." In response, defense counsel moved for involuntary dismissal arguing plaintiff's trial testimony was "beyond what[ is] mentioned in the [TRO]," amounted to

6

"bare allegations unsupported by any documentary evidence," and her responses to the questioning were "non-responsive for the most part."

The court granted defendant's motion in an oral opinion. It noted "as [the] testimony [as to the predicate act] flowed forward, [the court] became more and more concerned with the issue of credibility." The court found:

> Plaintiff was very difficult to get a responsive answer from. She talked in generalities and [the court] went over and over with her, and counsel went over and over with her instructing her that she needed to be specific with respect to the alleged predicate act, what actually happened on April . . . 19[] . . . .
>
> . . . .
>
> Her direct response finally to what happened on April . . . 19[], 2023 was he raped [her] on the 19th and he did it on the day before as well. She then went into an alleged phone conversation between the defendant and her father. It became clear she had no personal knowledge of that alleged act.

After reading the allegations set forth in plaintiff's complaint, the court stated:

> Could anything be further from the testimony of being raped by the defendant on that day and being raped by the defendant on the day before? That[ is] her alleged predicate act in her [TRO]. Her testimony speaks for itself here today. Today, her testimony is he raped [her] on [April 19] and he raped [her] the day before. In her [TRO], the only allegation of a sexual assault is

7

approximately one month ago [when] defendant came to plaintiff's home and sexually assaulted her.

The court determined plaintiff "clearly has shown no right to relief because [the court found] her testimony [was] so far afield of her written complaint that [the court found] no credibility at all in her testimony here today." The court also concluded there was "no possibility to find a legitimate inference that a complaint that the plaintiff filed within a couple of days of two alleged rapes by defendant does[ not] say a word about them, but she testifie[d] to them here in court."

On appeal, plaintiff argues: (1) the court made improper credibility findings on a motion for involuntary dismissal based only on plaintiff's testimony; (2) it was an abuse of discretion to deny plaintiff's adjournment request; and (3) the dismissal order should be vacated because plaintiff was denied the effective assistance of counsel.

We review a decision on a motion for involuntary dismissal de novo applying the same standard that governs the trial courts. ADS Assocs. Grp., Inc. v. Oritani Sav. Bank, 219 N.J. 496, 511 (2014). Rule 4:37-2(b) provides:

> After having completed the presentation of the evidence on all matters other than the matter of damages (if that is an issue), the plaintiff shall so announce to the court, and thereupon the defendant, without waiving the right to offer evidence in the event

the motion is not granted, may move for a dismissal of the action . . . on the ground that upon the facts and upon the law the plaintiff has shown no right to relief. Whether the action is tried with or without a jury, such motion shall be denied if the evidence, together with the legitimate inferences therefrom, could sustain a judgment in plaintiff's favor.

"If the court, 'accepting as true all the evidence which supports the position of the party defending against the motion and according [them] the benefit of all inferences which can reasonably and legitimately be deduced therefrom,' finds that 'reasonable minds could differ,' then 'the motion must be denied.'" ADS Assocs., 219 N.J. at 510-11 (quoting Verdicchio v. Ricca, 179 N.J. 1, 30 (2004)).

"[T]he judicial function here is quite a mechanical one. The trial court is not concerned with the worth, nature or extent (beyond a scintilla) of the evidence, but only with its existence, viewed most favorably to the party opposing the motion." Dolson v. Anastasia, 55 N.J. 2, 5-6 (1969). "Ordinarily, the dismissal motion should be denied if the plaintiff's case rests upon the credibility of a witness." Pressler & Verniero, Current N.J. Court Rules, cmt. 2.1 on R. 4:37-2 (citing Ferdinand v. Agric. Ins. Co. of Watertown, N.Y., 22 N.J. 482, 494 (1956)). However,

when the trial court's dismissal is dependent upon its acceptance of the credibility of a key witness, . . . the

9

dismissal is sustainable only where the witness's testimony "is clear and convincing, not incredible in the light of general knowledge and common experience, not extraordinary, not contradicted in any way by witnesses or circumstances, and so plain and complete that disbelief of the story could not reasonably arise in the rational process of an ordinarily intelligent mind . . . ."

[Cameco, Inc. v. Gedicke, 299 N.J. Super. 203, 213 (App. Div. 1997) (quoting Ferdinand, 22 N.J. at 494), aff'd in part, mod. in part, 157 N.J. 504 (1999) (second omission in original).]

Applying, as we must, the lenient standard applicable to a motion for involuntary dismissal pursuant to Rule 4:37-2(b), we conclude defendant's motion should properly have been denied. Plaintiff's complaint alleged the predicate acts of assault, criminal coercion, sexual assault, criminal trespass, harassment, and stalking based on conduct that occurred on April 19, 2023, and "[approximately] [one] month" before when "defendant came to [plaintiff's] home and sexually assaulted" her.

At trial, plaintiff testified that on April 19, 2023, defendant came to her home uninvited, refused to leave when asked, and "tried to have sex with her." She also testified defendant was forcing her to have a sexual relationship with her through threatening communication with her and her family. She testified her allegations were supported by text messages in which defendant "expressed

his remorse" and apologized. Rather than accept plaintiff's allegations as true as required when deciding a motion for involuntary dismissal, the court found plaintiff not credible and rejected her testimony in its entirety.

To be sure, plaintiff's testimony was, at times, confusing and difficult to follow. That may be attributable, at least in part, to the fact that she did not have the opportunity to prepare for trial with counsel, as well as to counsel's inability to refresh her recollection with the complaint or introduce the text messages between plaintiff and defendant.

Accepting as true all the evidence proffered by plaintiff and according plaintiff the benefit of all inferences which can reasonably and legitimately be deduced therefrom, we conclude plaintiff set forth evidence sufficient to sustain a judgment in her favor and defendant's motion should have been denied. Accordingly, we vacate the September 26, 2023 order dismissing plaintiff's TRO and remand to the Family Part to conduct a hearing on plaintiff's application for a FRO within thirty days hereof.

Because the judge previously expressed opinions on the merits of plaintiff's application and witness credibility, the Presiding Judge of the Family Part shall assign this matter to a different judge for disposition. R. 1:12-1(d);

J.G. v. J.H., 457 N.J. Super. 365, 376 (App. Div. 2019).  We need not reach plaintiff's remaining claims because they are moot.

Vacated and remanded.  We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-0521-23