# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1290-24

N.J.,[1]

    Plaintiff-Appellant,

v.

C.L.K.,

    Defendant-Respondent.

_____

        Submitted October 7, 2025 – Decided October 30, 2025

        Before Judges Rose and DeAlmeida.

        On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Morris County, Docket No. FV-14-0495-25.

        N.J., appellant pro se.

        Advokat & Rosenberg, attorneys for respondent (Jeffrey M. Advokat, on the brief).

---

[1] We use initials to preserve the confidentiality of domestic violence records, R. 1:38-3(d)(9), and protect the confidentiality of domestic violence victims, R. 1:38-3(d)(10).

PER CURIAM

Plaintiff N.J. appeals from a December 3, 2024 directed verdict, dismissing her complaint and dissolving her temporary restraining order (TRO) against defendant C.L.K. pursuant to the Prevention of Domestic Violence Act (PDVA or Act), N.J.S.A. 2C:25-17 to -35. Although the trial court found plaintiff technically proved the predicate act of assault under the first prong of the seminal two-prong test enunciated in Silver v. Silver, 387 N.J. Super. 112 (App. Div. 2006), the court concluded plaintiff failed to satisfy her need for restraints under the second Silver prong.

Self-represented on appeal, plaintiff argues the trial court erroneously determined "a 'history' of domestic violence [was] a dispositive factor" under the second Silver prong and improperly assessed the evidence on defendant's directed verdict motion by failing to afford her all favorable inferences. Plaintiff also contends the December 3, 2024 order does not comport with the court's oral findings.[2] She seeks a new hearing before another judge. Persuaded by

_____

[2] Box number three on the form order was checked, indicating the court "determined that the plaintiff's allegation of domestic violence ha[d] not been substantiated." Plaintiff's counsel notified the court that the order failed to comport with the court's oral finding that plaintiff established a predicate act of domestic violence. A Judiciary employee responded box number three was the only alternative "in this situation," but noted the finding should have been

2

plaintiff's substantive arguments, we reverse and remand for a new trial before a different judge, rendering moot her procedural contentions about the erroneous order.

I.

The parties were never married but were in a dating relationship and have a son, who was just under one year old at the time of the alleged incident and lived with plaintiff. Defendant resided with plaintiff and their child "for a number of months," but had begun moving out at the time of the incident.

In her complaint, plaintiff alleged on October 30, 2024, at 9:30 p.m., the parties were "having on[]going relationship issues." That day, she "asked . . . defendant to come over so they could work things out." When he arrived, "an argument ensued and . . . defendant began to pack some of his personal belongings." Plaintiff "attempted to stop . . . defendant from packing his belongings so that they could have a conversation." Plaintiff further asserted defendant then "picked her up by her arms and shoved her across the room . . . approximately ten times."

_____

explained in the comments section of the order. The court did not issue an amended order.

A-1290-24

On December 3, 2024, the court conducted a trial on plaintiff's application for a final restraining order (FRO). Both parties were represented by counsel. Plaintiff testified on her own behalf and presented the testimony of her mother. Plaintiff also introduced into evidence two videos from her doorbell security camera. The footage from one video captured the parties' argument; the other depicted the door shaking when defendant allegedly threw her against it.

Plaintiff testified about the allegations asserted in her complaint, maintaining she invited defendant to the apartment on October 30, 2024, to "see if [they] could figure something out for the child." Before defendant's arrival, plaintiff took their son to her mother's house because defendant screamed at her during their telephone conversation and she was afraid to have the child present when defendant arrived.

Plaintiff further stated when defendant arrived at the apartment, "[h]e was yelling right off the bat." He swore at plaintiff and said, "if he owned th[e] apartment, there would be holes in all of the walls" and "he was done with the relationship." Plaintiff asked defendant to stop yelling so they could engage in a calm conversation. Defendant walked into the bedroom and began packing his belongings. In response, plaintiff unpacked defendant's belongings and attempted to speak with him. Plaintiff further testified defendant elbowed her

A-1290-24

out of his way then "pick[ed her] up by [her] shoulders off the floor" and "thr[ew her] behind him into the wall" about ten times.  As a result, plaintiff's body struck the bed, wall, and entry door.

Plaintiff stated she feared defendant because he "reacted in such . . . an aggressive way" to a "small argument."  When questioned why she needed an FRO, plaintiff replied:

> I fear that any small thing might set him off.  I don't know what will set him off in the future for myself or my son.  And again, this is not a regular breakup . . . .
> [W]e have a child together who's very young.  And there are at least seventeen more years that I might have to be seeing [defendant].

On cross-examination, plaintiff acknowledged, in her complaint, she "swore that there was no prior history of domestic violence, reported or unreported."  She further acknowledged defendant lacked a criminal history and she did not file a criminal complaint against defendant pertaining to the present allegations.

Plaintiff's mother testified plaintiff explained the incident to her and demonstrated how defendant threw her against the wall.  Plaintiff told her mother she had two bruises from the incident and defendant still had a key to the apartment.  Plaintiff also told her mother "the relationship had already ended

5

A-1290-24

and this was a matter of figuring out is it truly final or not or were they going to get back together again, or how were they going to proceed with the child."

Following the close of plaintiff's case, defense counsel moved to dismiss plaintiff's complaint, arguing plaintiff failed to satisfy the elements of simple assault. See N.J.S.A. 2C:12-1(a), :25-19(a)(2). To support his argument, defense counsel cited contradictions between the testimony of plaintiff and her mother, and plaintiff's testimony and the allegations in her complaint. Plaintiff's counsel countered plaintiff established a prima facie case of domestic violence and assault because, at this stage of the proceedings, the evidence "should be viewed in the light most favorable toward [her]."

Immediately thereafter, the court rendered an oral decision granting defendant's motion. The court summarized the principles espoused in Silver, but did not address the rule governing involuntary dismissals. See R. 4:37-2(b).

The court's decision commenced by "comment[ing] on . . . plaintiff's credibility." Rather than viewing the evidence in the light most favorable to her, the court discredited plaintiff's reasons for the argument between the parties. Finding there was "no evidence that [plaintiff was] throwing him out," the court instead determined the argument concerned plaintiff's unhappiness. The court concluded "this was an argument about the ending of a relationship."

6

The court nonetheless found plaintiff established a predicate act under the first <u>Silver</u> prong. Apparently addressing plaintiff, the court elaborated:

> I could find, and if I -- if we proceed and have [defendant] testify and I cross-examine him, he's going to have, I suspect, a hard time saying he didn't have his physical hands on you in at least an aggressive way.[3] And so based on that, I can find a technical definition or put him under the technical definition of assault under domestic violence.[4]

Turning to the second <u>Silver</u> prong, the court was not convinced plaintiff needed protection from defendant. According to the court:

> He wanted to leave. The concern here, as your mom raised to you, is that he had a key. Well, you could get the key. You can have the landlord change the locks. And that fear goes away. But you've testified that he wanted to end the relationship. And I think that that didn't sit so well with you.

---

[3] After the court issued the December 3, 2024 order, our Supreme Court held "although the Fifth Amendment does not afford a defendant in a PDVA FRO hearing blanket immunity, a defendant may invoke the privilege against self-incrimination in response to specific questions that raise reasonable risks of self-incrimination, and that no adverse inference may be drawn from the exercise of that right." <u>M.A. v. J.H.M.</u>, 260, N.J. 522, 527 (2025). On remand, the proceedings in the present matter shall abide the Court's holding in <u>M.A.</u>

[4] Although defendant did not have an opportunity to present his case, he does not cross-appeal from the trial court's finding he committed the predicate act of simple assault. Because the court made credibility findings, however, on remand before the successor judge, plaintiff shall re-present her evidence under both <u>Silver</u> prongs.

A-1290-24

Noting there was no prior history of domestic violence, the court found plaintiff failed "to show that this was a historical developing fear such that there is a need for the issuance of a restraining order for continuing protection." The court found plaintiff failed to satisfy the remaining factors. See N.J.S.A. 2C:25-29(a). Accordingly, the court declined to issue an FRO. That same day, the court issued a memorializing form order of dismissal, dissolving the TRO.

II.

We review a trial court's decision on a motion for involuntary dismissal pursuant to Rule 4:37-2(b), by applying the same standard as the trial court. See ADS Assocs. Grp., Inc. v. Oritani Sav. Bank, 219 N.J. 496, 511 (2014). A motion for involuntary dismissal is premised "on the ground that upon the facts and upon the law the [non-moving party] has shown no right to relief." R. 4:37-2(b). The motion must be denied if "'the evidence, together with the legitimate inferences therefrom, could sustain a judgment in . . . favor' of the party opposing the motion." Dolson v. Anastasia, 55 N.J. 2, 5 (1969) (quoting R. 4:37-2(b)). The motion must be denied "[i]f the court, 'accepting as true all the evidence which supports the position of the party defending against the motion and according him [or her] the benefit of all inferences which can reasonably and legitimately be deduced therefrom,' finds that 'reasonable minds could

A-1290-24

differ.'" ADS Assocs., 219 N.J. at 510-11 (quoting Verdicchio v. Ricca, 179 N.J. 1, 30 (2004)).

"[T]he judicial function here is quite a mechanical one. The trial court is not concerned with the worth, nature or extent (beyond a scintilla) of the evidence, but only with its existence, viewed most favorably to the party opposing the motion." Dolson, 55 N.J. at 5-6. "Ordinarily, the dismissal motion should be denied if the plaintiff's case rests upon the credibility of a witness." Pressler & Verniero, Current N.J. Court Rules, cmt. 2.1 on R. 4:37-2 (2026) (citing Ferdinand v. Agric. Ins. Co. of Watertown, N.Y., 22 N.J. 482 (1956)). Accordingly, "[a] motion for involuntary dismissal only should be granted where no rational juror could conclude that the plaintiff marshaled sufficient evidence to satisfy each prima facie element of a cause of action." Godfrey v. Princeton Theological Seminary, 196 N.J. 178, 197 (2008).

When determining whether to grant an FRO pursuant to the PDVA, the trial judge must make two determinations. Silver, 387 N.J. Super. at 125-27. Under the first Silver prong, "the judge must determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19[(a)] has occurred." Silver, 387 N.J. Super. at 125.

If the court finds the defendant committed a predicate act of domestic violence, then the second inquiry "is whether the court should enter a restraining order that provides protection for the victim." Id. at 126. Although the second prong inquiry "is most often perfunctory and self-evident, the guiding standard is whether a restraining order is necessary, upon an evaluation of the factors set forth in N.J.S.A. 2C:25-29[(a)](1) to -29[(a)][(7)],[5] to protect the victim from an immediate danger or to prevent further abuse." Id. at 127. These factors include, but are not limited to:

> (1) The previous history of domestic violence between the plaintiff and defendant, including threats, harassment and physical abuse;
>
> (2) The existence of immediate danger to person or property;
>
> (3) The financial circumstances of the plaintiff and defendant;
>
> (4) The best interests of the victim and any child;
>
> (5) In determining custody and parenting time the protection of the victim's safety;
>
> (6) The existence of a verifiable order of protection from another jurisdiction; and

---

[5] Although N.J.S.A. 2C:25-29(a)(7), became effective on January 8, 2024, and as such, was applicable at the December 3, 2024 hearing in this case, the trial court did not reference this factor in its decision. Nor do the parties cite paragraph (7) in their appellate briefs.

(7) Any pattern of coercive control against a person that in purpose or effect unreasonably interferes with, threatens, or exploits a person's liberty, freedom, bodily integrity or human rights with the court specifically considering evidence of the need for protection from immediate danger or the prevention of further abuse. . . .

[N.J.S.A. 2C:25-29(a).]

Recognizing not all the factors are relevant under the PDVA, our Supreme Court has long held "the Act does require that 'acts claimed by a plaintiff to be domestic violence . . . be evaluated in light of the previous history of violence between the parties.'" Cesare v. Cesare, 154 N.J. 394, 402 (1998) (quoting Peranio v. Peranio, 280 N.J. Super. 47, 54 (App. Div. 1995)). Pertinent to this appeal, the Court elaborated:

Although a court is not obligated to find a past history of abuse before determining that an act of domestic violence has been committed in a particular situation, a court must at least consider that factor in the course of its analysis. Therefore, not only may one sufficiently egregious action constitute domestic violence under the Act, even with no history of abuse between the parties, but a court may also determine that an ambiguous incident qualifies as prohibited conduct, based on a finding of violence in the parties' past.

[Id. at 402.]

Moreover, when the predicate act is an offense that inherently involves the use of physical force and violence, the decision to issue an FRO "is most

11

often perfunctory and self-evident." Silver, 387 N.J. Super. at 127. And a single predicate act involving the use of physical force or violence is sufficient to grant an FRO if there is a chance of immediate or continuing danger. See McGowan v. O'Rourke, 391 N.J. Super 502, 506 (App. Div. 2007) (affirming an FRO after the defendant mailed graphic sexual photos of the plaintiff to her sister because there was threatened continued harm); C.C. v. J.A.H., 463 N.J. Super. 419, 435-36 (App. Div. 2020) (rejecting the argument that no history of violence negates the necessity for an FRO and holding the plaintiff's fear combined with the defendant's offensive conduct was sufficient).

Against these guiding principles, we apply as we must, the lenient standard applicable to a motion for involuntary dismissal pursuant to Rule 4:37-2(b). Plaintiff testified defendant threw her against the wall and door of the apartment. She expressed concern about seeing defendant again and what he might do to her and their young son in the future. The court discredited her testimony and determined plaintiff did not need continuing protection because "[defendant] wanted to leave" and plaintiff could have the apartment locks changed. Rather than accepting plaintiff's allegations as true and viewing the evidence presented in the light most favorable to her as the non-moving party, the court weighed the evidence against her.

12

Accepting as true all evidence proffered by plaintiff and according her the benefit of all reasonable and legitimate inferences therefrom, reasonable minds could differ about the nature of the argument and plaintiff's need for an FRO. We therefore conclude the trial court erroneously granted defendant's directed verdict motion.

Accordingly, we vacate the December 3, 2024 order dismissing plaintiff's TRO, reinstate the TRO, and remand the matter to the Family Part to conduct a new trial on plaintiff's FRO application within thirty days of our order. Because the trial court previously expressed opinions on the merits of plaintiff's application and her credibility, the matter shall be assigned to another judge for disposition. See R. 1:12-1(d); see also J.G. v. J.H., 457 N.J. Super. 365, 376 (App. Div. 2019). In remanding this matter, we express no opinion on the merits of the FRO application.

Reversed and remanded. Jurisdiction is not retained.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division